[No. 33668. Department One. February 14, 1957.]

VIRGIL N. VALAER, *Appellant*, v. DOROTHY VALAER CAMPBELL *et al., Respondents.*[1]

*Cameron Sherwood* and *Robert A. Comfort*, for appellant.

*Tuttle & Luce*, for respondents Campbell *et al.*

*Ringhoffer & Ringhoffer*, for respondent Baker-Boyer National Bank of Walla Walla.

SCHWELLENBACH, J.—This is the second appeal involving these parties. See *Valaer v. Valaer*, 45 Wn. (2d) 565, 277 P. (2d) 326. The first appeal was concerned with an action by

[1]Reported in 307 P. (2d) 256.

Mr. Valaer to modify a divorce decree previously obtained by Mrs. Valaer, which ratified and confirmed a property settlement agreement entered into between the parties on April 29, 1942, in contemplation of divorce. We held that the payments provided for in the agreement were not to be alimony and support money, but that they constituted a part of the settlement of property rights between the parties and that the decree could not be modified. We then stated: "Nothing we have said herein, however, is intended to foreclose appellant of his right, if any he may have, to attack the trust agreement of July 15, 1942."

We quote portions of the property settlement agreement:

"That he will deed, in trust, to the Baker-Boyer National Bank of Walla Walla, Washington, all of the farm lands now owned by him in Walla Walla County, State of Washington, to be held in trust by the said Baker-Boyer National Bank for the purpose of providing an income for the said party of the second part and for the said children of the parties hereto; said lands to be held in trust during the lifetime of the said party of the second part or until the youngest child of said parties shall arrive at the age of *30* years.

"The said Trustee to manage the said farm lands and to apply the proceeds therefrom toward the payment of the interest on the mortages now in effect against said lands and the taxes and other necessary maintenance charge, and the net income after the deductions of said charges to be paid to party of the second part; provided, however, that the said party of the second part shall not be paid in excess of the sum of Four Hundred ($400.00) Dollars monthly, and the balance of the net income shall be held in a reserve fund to be used by the said Trustee for the purpose of retiring the mortgage indebtedness against said lands and for the purpose of meeting the Four Hundred ($400.00) Dollar monthly payment to the party of the second part in the event that the income from the said lands in any subsequent years may not allow of the payment of the full amount of Four Hundred ($400.00) Dollars monthly.

"The said Trustee to have the power and authority to sell any of the said lands for the purpose of retiring the mortgage indebtedness against the remaining lands and thus clearing a reasonable portion of said lands of all mortgage liens.

"And providing further that if the said reserve fund exceeds the sum of Ten Thousand ($10,000.00) Dollars and the

said mortgage indebtedness has been paid, then any sum in excess of the said sum of Ten Thousand ($10,000.00) Dollars shall be distributed and paid to the said party of the second part in addition to the Four Hundred ($400.00) Dollar monthly payment hereinbefore prescribed.

"That the details of the trust and management of the said lands shall be determined by and between the parties in a subsequent agreement and subject to the approval of the said Trustee."

The trust agreement was dated July 15, 1942. In it Virgil N. Valaer, as grantor, conveyed all of his farm lands, in trust, to the Baker-Boyer National Bank, as trustee. We quote, in part:

"THAT WHEREAS, the Grantor and Dorothy Valaer, the beneficiary hereinafter designated, are husband and wife, and are the parents of Dorothy Joan Valaer aged 17 years, Eugene Webb Valaer aged 15 years and Mary Ellen Valaer aged 14 years, hereinafter mentioned;

"AND WHEREAS, the said Virgil N. Valaer and Dorothy Valaer have heretofore made and entered into an agreement of separation, property settlement, alimony and support and maintenance, wherein and whereby the said Grantor has agreed to convey, in trust, certain real property hereinafter described unto said Trustee in pursuance of the terms of said agreement;

"AND WHEREAS, the said Grantor desires to convey the real property hereinafter described to the said Trustee for the purpose of creating said trust;

"AND WHEREAS, the said Trustee has agreed to accept said property and to hold the same and the proceeds and income thereof upon the trusts hereby created;

" . . .

"3. To sell any of said lands to the end and purpose that the remainder of said lands may be cleared of any mortgage indebtedness and to make, execute and deliver to the purchasers thereof all necessary and proper conveyances therefor, with special warranty only as to Trustee.

" . . .

"8. The Grantor expressly surrenders all right and power to amend, modify or revoke this trust, in whole or in part.

"9. The said Trustee is to pay to the said Dorothy Valaer during the period of her natural life, and in the event of her death to the said following named children of the said Grantor and the said Dorothy Valaer, to-wit: Dorothy Joan

Valaer, Eugene Webb Valaer and Mary Ellen Valaer, or the survivors thereof, until the youngest of said surviving children becomes of the age of thirty (30) years, all of the net income from the said lands in monthly installments; and provided that until the mortgage indebtedness on said lands is fully liquidated and paid and until a reserve of Ten Thousand ($10,000.00) Dollars, as hereinafter provided for, is established the said monthly installments shall not exceed the sum of Four Hundred ($400.00) Dollars and to hold in a reserve fund all of the excess of said net income over and above the sum of Forty-eight hundred ($4800.00) Dollars per annum until said reserve equals the sum of Ten Thousand ($10,000.00) Dollars; said reserve fund to be used for the purpose of paying the mortgage indebtedness in force against said lands and to provide for the payment of the subsequent installments of Four Hundred ($400.00) Dollars per month in the event that prices of crops or rental returns shall diminish to such an extent that the current annual income from said lands does not provide sufficient money for said monthly payment of Four Hundred ($400.00) Dollars; and provided further that in the event that the lands remaining in this trust are fully cleared of mortgage indebtedness and the said reserve fund equals the sum of Ten Thousand ($10,000.00) Dollars, then all of the net proceeds and income of said lands may be paid to the beneficiary or beneficiaries of this trust.

"10. That in the event and as long as the income from the trust hereby created is held to be taxable to the grantor, he shall be reimbursed out of trust income for the income taxes he is so required to pay by the Trustee paying to him annually, on or before July 1st or as soon thereafter as the amount is determinable, an amount equal to the amount of taxes which this trust or the beneficiaries would be required to pay if it were treated as a taxable entity and the income taxable to it or them and such amount may be deducted by said trustee from the gross income of said estate. Provided, however, that this provision shall not apply to the taxable income from the property of said trust for the calendar year of 1942.

"11. Upon the death of the said Dorothy Valaer then this trust is terminated and closed, providing that at the time of her death all of the surviving children of the Grantor and Dorothy Valaer have reached the age of thirty (30) years; and if any of the said surviving children have not reached the age of thirty (30) years then this trust is to terminate

and close upon the arrival of all of said surviving children at the age of thirty (30) years.

"12. And upon the termination of this said trust, as hereinbefore provided, the Trustee shall thereupon distribute and convey all of the property remaining in said trust to the following named children of the said Grantor and Dorothy Valaer in equal shares, Dorothy Joan Valaer, Eugene Webb Valaer and Mary Ellen Valaer; and in the event that any of said children shall not be living at the time of the termination of said trust, then an equal one-third of the said trust property shall be distributed and conveyed by the said Trustee to the heirs or devisees of said deceased child; with proper, special covenants of warranty only against said Trustee."

The agreement was executed by Dorothy Valaer on July 23, 1942. It was then mailed to Virgil Valaer at Oakland, California, where he was residing, and was executed by him on July 30, 1942. He returned the agreement to Walla Walla, where it was executed by the officers of the trustee bank on August 5, 1942.

The interlocutory order of divorce was entered on March 26, 1943, after a default hearing at which no mention was made of the trust agreement. The final decree was entered on December 9, 1943.

Mr. Valaer commenced this action against his former wife, his children, and the bank, as trustee.

The first cause of action alleged that the trust agreement was a part of the divorce decree, thereby becoming merged in and modified by the decree, and judgment was prayed for quieting title in the plaintiff to his reversionary rights.

The second cause of action alleged that his wife knew of the existence of the trust agreement and intentionally withheld any mention of it to the trial judge, and that she should now be precluded from claiming any benefits under it.

The third cause of action alleged that the parties did, through mutual mistake, execute the trust agreement in ignorance of the fact that it was inconsistant with and contrary to the property settlement agreement.

The fourth cause of action alleged mistake on plaintiff's part as to the effect of the trust agreement.

The fifth cause of action alleged that the provision to pay all of the net proceeds to the beneficiary, after the mortgage indebtedness is paid and there is a reserve fund of ten thousand dollars, if enforced after April 2, 1958 (when youngest child reaches age of thirty years), would render the trust agreement illegal and void, because it provides for unlawful accumulation of lands, proceeds, and income from the lands.

After a trial, the court entered judgment dismissing the action and this appeal follows.

The entire case hinges on whether or not it was the intention of the parties, and especially of the grantor, that the property be distributed to the children upon the termination of the trust.

A reading of the property settlement agreement would lead one to believe that the husband would place his farm lands in trust for the purpose of insuring the payments provided for in the agreement, and, when the payments were made, the trust would terminate and the lands would revert to the grantor. However, although the property settlement agreement went into considerable detail concerning the trust, it did not expressly provide that the lands would revert to the grantor upon its termination. There was nothing unusual in the provision of the trust agreement that, upon its termination, distribution would be made to the children of the parties. Furthermore, the evidence indicated that Mr. Valaer was quite tax conscious. At that time, he was interested in his business ventures, which had every indication of being successful. Both the property settlement agreement and the trust agreement gave the trustee authority to sell any of the lands to pay the mortgage indebtedness, and the record shows that part of the lands were sold for that purpose.

In 1952, appellant wrote to his former wife and to the bank, stating that it was his understanding of the trust agreement that all of the income over and above four hundred dollars per month after establishment of the reserve fund of ten thousand dollars, and after the payment of the mortgage indebtedness and education of the children, was to

be paid to him. No mention was made of any reversionary rights. In the letter to his former wife, he stated: "I certainly would never have signed the document if I had not believed that I was to commence to receive income over and above your $4,800.00 after the mortgage was paid." It is noteworthy that both the property settlement agreement and the trust agreement state unequivocally that, after the mortgage indebtedness is paid and the reserve fund exceeds ten thousand dollars, then any sum in excess thereof shall be distributed to the wife.

The property settlement agreement provided: "Said lands to be held in trust during the lifetime of the said party of the second part, or until the youngest child of the said parties shall arrive at the age of thirty years." That language, standing alone, might require some interpretation. However, it also provided that the details of the trust should be determined in a subsequent agreement. The latter clarified any ambiguity by providing that payments were to be made to the wife during her natural life, and in the event of her death, to the children until the youngest child should reach the age of thirty years. That is not a strained interpretation, especially in view of the fact that this was an agreement to provide for the support of the wife and children.

Appellant contends that the divorce decree became *res judicata*; that only the property settlement agreement was ratified and adopted by the decree, and that the trust agreement, which was withheld from the court, must fail in so far as it is different from or inconsistent with the decree.

■ If the trust agreement had been executed in the exact language contained in the property settlement agreement, that is, without any provision for reversion or remainder, then, upon the termination of the trust, the property would revert to the grantor by operation of law. *McKenna v. Seattle-First Nat. Bank,* 35 Wn. (2d) 662, 214 P. (2d) 664, 16 A. L. R. (2d) 679.

■ However, that was not a deed of trust. It was merely part of a property settlement agreement which provided that the details of the trust would be determined in a subsequent agreement. A detail is a particular, or an item, as dis-

tinguished from a material part. *State ex rel. Van Deusen v. Williams*, 143 Ala. 501, 39 So. 276. Ordinarily, a provision for reversion or remainder would not be a detail. It would be a material part of a trust instrument. But here the parties by their actions made it a detail. The property settlement agreement did not provide for a reversion at the termination of the trust, nor did it provide for any disposition of the remainder. That detail was left out and was determined in the trust agreement itself.

When we know all of the facts, we find nothing different or inconsistent between the two agreements. They were both prepared in contemplation of divorce. There was no inconsistency in providing that the trust property be turned over to the children upon the termination of the trust, or with the provision that the wife receive payments under the trust during her natural life.

There was nothing fraudulent in the failure of the wife to present the trust agreement at the divorce hearing. The property settlement agreement, which was an agreement to settle their property rights, was presented and approved. The trust agreement was an incident of it, and there was no more occasion to present it than there was to present the various deeds and bills of sale executed to conclude the transaction.

The evidence is clear that there was no mutual mistake.

The evidence does not preponderate against the finding of the trial court that there was no unilateral mistake on the part of appellant. Although at one place he testified that he did not read the trust agreement before he executed it, he admitted later that he did. At all times he was represented by counsel who participated in preparing the documents. At that time he thought he was making a good bargain. Unfortunately, later developments proved that he was wrong. We sympathize with him because of the predicament in which he now finds himself. However, we cannot make a new contract for the parties.

We find no merit in appellant's contention in support of his fifth cause of action.

The judgment is affirmed.

DONWORTH, WEAVER, ROSELLINI, and FOSTER, JJ., concur.

April 1, 1957. Petition for rehearing denied.