[No. 32664. Department Two. November 22, 1954.]

DOROTHY VALAER, *Respondent*, v. VIRGIL N. VALAER, *Appellant*.[1]

*Cameron Sherwood* and *Robert A. Comfort*, for appellant.

*Tuttle & Luce*, for respondent.

SCHWELLENBACH, J.—This is an appeal from a judgment denying a petition to modify a divorce decree.

Virgil and Dorothy Valaer were married in Walla Walla on June 21, 1923. Three children, Dorothy Joan, Eugene Webb, and Mary Ellen, were born the issue of the marriage. At the time of the divorce, the children were aged seventeen, fifteen, and fourteen years respectively.

When the parties married, neither of them owned very much property. In 1928, Virgil inherited property from his father's estate valued at approximately five hundred thousand dollars. This consisted chiefly of Walla Walla county farm land. Upon receipt of the inheritance, the parties con-

[1] Reported in 277 P. (2d) 326.

structed a large and expensive home. Virgil mortgaged the farm lands and invested the proceeds in various business enterprises. He became particularly interested in one of his businesses known as Oil Purifier Incorporated, and in 1940, when the company obtained some war contracts in California, he moved there to take charge of the operations, leaving his family in Walla Walla.

Domestic difficulties arose, and in 1942 divorce became imminent. April 29, 1942, the husband, as party of the first part, and the wife, as party of the second part, entered into a property settlement agreement. It recited that, because of various disagreements, they considered it impossible to longer live together as husband and wife, and that they desired to effect a property settlement. (At that time the parties had not lived together as husband and wife for two years.) They agreed that the wife should have the custody of the three children, with reasonable visitation rights in the husband. The agreement provided in part:

"Now, THEREFORE, in consideration of the mutual covenants and agreements herein contained and for the purpose of making and effecting a property settlement between the parties hereto and providing for the support and maintenance of the children of the said parties, the said party of the first part does hereby covenant and agree that he will pay all debts now incurred for the maintenance and support of the said parties; that he will make, execute and deliver to the party of the second part a good and sufficient conveyance of the residence and home of the said parties in Walla Walla, Washington, together with the household goods and furniture and the family car.

"That he will deed, in trust, to the Baker-Boyer National Bank of Walla Walla, Washington, all of the farm lands now owned by him in Walla Walla County, State of Washington, to be held in trust by the said Baker-Boyer National Bank for the purpose of providing an income for the said party of the second part and for the said children of the parties hereto; said lands to be held in trust during the lifetime of the said party of the second part or until the youngest child of said parties shall arrive at the age of 30 years.

"The said Trustee is to manage the said farm lands and to apply the proceeds therefrom toward the payment of the interest on the mortgage now in effect against said lands and

the taxes and other necessary maintenance charges, and the net income after the deductions of said charges to be paid to party of the second part; provided, however, that the said party of the second part shall not be paid in excess of the sum of Four Hundred ($400.00) Dollars monthly, and the balance of the net income shall be held in a reserve fund to be used by the said Trustee for the purpose of retiring the mortgage indebtedness against said lands and for the purpose of meeting the Four Hundred ($400.00) Dollar monthly payment to the party of the second part in the event that the income from the said lands in any subsequent years may not allow of the payment of the full amount of Four Hundred ($400.00) Dollars monthly.

"  .   .   .

"And providing further that if the said reserve fund exceeds the sum of Ten Thousand ($10,000.00) Dollars and the said mortgage indebtedness has been paid, then any sum in excess of the said sum of Ten Thousand ($10,000.00) Dollars shall be distributed and paid to the said party of the second part in addition to the Four Hundred ($400.00) Dollar Monthly payment hereinbefore prescribed.

"  .   .   .

"It Is Further Agreed by and between the parties hereto that the above provision shall be in lieu of a property settlement, allowance for alimony and support for the said party of the second part and the said minor children of the parties hereto, excepting that the party of the first part will, when the occasion arises, provide the funds for a college education for each of the said children.

"It Is Further Agreed by and between the parties hereto that in the event that the proceeds from the said farm lands is not sufficient during the first twelve months following the execution of said trust agreement to pay the said party of the second part the said sum of Four Hundred ($400.00) Dollars monthly, the party of the first part will pay the said sum of Four Hundred ($400.00) Dollars monthly either to the Trustee for the said party of the second part or to the party of the second part directly.

"In Consideration Whereof, the party of the second part agrees to make, execute and deliver any conveyances and releases necessary to put this property settlement into full force and effect and vest the title to any of the remaining property of the party of the first part or of the parties hereto

in the said party of the first part, free and clear of any right, title, interest or claim of the party of the second part.
" . . ."

In accordance with the above agreement, on July 15, 1942, Virgil entered into a trust agreement with the Baker-Boyer National Bank of Walla Walla, and conveyed his farm lands in trust to the bank. At that time, the farm lands were mortgaged in the sum of $150,000. We shall not recite the details of the trust agreement because we do not consider them material to a decision of this case. At about the same time, each party conveyed to the other his or her interest in the remaining property, all in accordance with the provisions of the property settlement agreement.

July 10, 1942, Dorothy commenced an action for divorce. Paragraph IV of the complaint alleged:

"That the plaintiff and defendant herein, have heretofore made and entered into a property settlement agreement which is a full and complete settlement between the parties for the maintenance and support of the plaintiff and the said minor children of plaintiff and defendant, and in full settlement of all alimony and property rights of the parties."

The prayer asked that the property settlement "be ratified, approved and confirmed by the court."

June 30, 1942, the husband, before a notary public in Oakland, California, executed the following notice of appearance in the divorce action:

"I hereby acknowledge service of the summons and complaint in the above entitled matter and waive other service and notice in the above entitled cause.

"I herewith enter my appearance in the above entitled action and consent that the Court may hear the issues raised by the complaint in the above entitled action without further appearance by me."

The case came on for hearing March 26, 1943, before Honorable Timothy A. Paul. It was a default hearing. The property settlement was presented to the court for its consideration. The trust agreement was not presented, and from our examination of the proceedings it does not appear that it was mentioned. Finding No. IV provided:

"That the Plaintiff and Defendant herein have heretofore made and entered into a property settlement agreement which is a full and complete settlement and agreement between the parties for the maintenance and support of the Plaintiff and the said minor children of the Plaintiff and Defendant and in full settlement of all alimony and property rights of the parties and that the parties hereto have fully complied with the terms of said settlement and agreement and executed the conveyances provided for therein."

Conclusion No. 3 provided:

"That the property settlement agreement heretofore made and entered into by and between the Plaintiff and Defendant, a copy of which has been filed herein as Plaintiff's Exhibit I should in all respects be ratified and confirmed by the Court."

The interlocutory order provided:

"IT IS FURTHER ORDERED, CONSIDERED, ADJUDGED AND DECREED BY THE COURT that the property settlement agreement heretofore entered into by and between the parties hereto, and a copy of which has been filed herein as Plaintiff's Exhibit I be and the same is in all respects ratified, confirmed and approved by the Court."

Since the entry of the divorce decree, the farms have prospered, the mortgage has been fully paid, and the reserve fund has reached ten thousand dollars. Mrs. Valaer's income from the proceeds of the farm lands now approximates two thousand dollars a month. In addition, she has received an inheritance from her father's estate. On the other hand, Mr. Valaer has not done so well. His war contracts ceased, and he has been compelled to sell most of his business interests at a tremendous loss. He has remarried, and with the help of his wife he now operates a small oil business in Walla Walla, from which he receives an income of around two hundred dollars a month. In addition, he receives two hundred dollars per month from an annuity left to him by his father. Alleging a change in circumstances as heretofore described, and in addition that the children have all completed their educations, Mr. Valaer petitioned the court for a modification of the alimony and support provisions of the interlocutory order. The trial court denied the

petition on the ground that it did not have the power to modify the decree. This appeal follows.

Our problem is to determine whether the payments provided for in the agreement of April 29, 1942 were alimony and support money or whether they were in settlement of property rights.

In *Millheisler v. Millheisler*, 43 Wn. (2d) 282, 261 P. (2d) 69, we said:

"It is well settled that the provisions of a divorce decree relative to alimony and support money may be modified on a proper showing, even if the payments were provided for in an agreement between the parties. It is equally well settled that the disposition of property made either by a divorce decree or by agreement between the parties and approved by the divorce decree cannot be so modified. [Citing cases.]

"Future payments provided for by an agreement in writing can be either alimony and support money or a property settlement, depending upon the circumstances and the intent of the parties."

There are many definitions of "alimony" to be found in the decisions of the courts, and while they differ more or less as to details they all agree that primarily alimony is an allowance in a divorce action to the wife from the husband for her support, in lieu of the legal obligation of the husband to support her. 2 Nelson, Divorce and Annulment (2d ed.) 5, § 14.02.

Generally, alimony has several distinct characteristics. It must have as its purpose the support and maintenance of the wife, although the term is frequently used to include the support of the children when their custody has been awarded to the wife. Usually, it is an allowance of periodical payments, but it may be in the form of a lump sum. Normally, alimony ceases upon the death of either of the parties. It is usually provided for by an order of the court incorporated in a decree of divorce. It is generally in the form of money, and payment of a specific sum is required.

However, it appears that no one of these characteristics is conclusive in distinguishing alimony payments from prop-

erty settlement payments. The use of the words "alimony" or "support and maintenance" are not always necessary. In *Walls v. Walls*, 179 Wash. 440, 38 P. (2d) 205, this court said:

"The fact that the order recites that the award is for respondent's care and maintenance does not require a holding that this particular portion of the decree attempts to award alimony to respondent. These words are not conclusive, and can not be held to contradict the manifest intent of the award considered as a portion of the interlocutory order."

Similar language is used in *Boudwin v. Boudwin*, 162 Wash. 142, 298 Pac. 337, and *State ex rel. Adams v. Superior Court*, 36 Wn. (2d) 868, 220 P. (2d) 1081.

But the payments to the wife under the agreement here in question, which was ratified in the decree, have only one of the characteristics usually associated with alimony payments. They are periodic payments for the support of the wife and children. Even so, they do not assure the wife and children of support. Should there be a crop failure or a large decline in the market price of wheat, it is conceivable there would not be sufficient income to support the beneficiaries. There is no obligation on the part of the husband to make up the deficit. On the other hand, should the crops and market be good, the income would be more than sufficient to meet the support requirements. Thus it appears that the question of support was not the primary reason motivating the execution of the agreement.

In *Millheisler v. Millheisler, supra,* the facts were quite similar to those in the case at bar. In that case, the parties entered into a property settlement agreement, which recited marital difficulties and that they were living separate and apart. It was agreed that certain items of real and personal property were to be the wife's separate property and that other items were to be the husband's separate property. It provided that she would be paid one half of the royalties from certain oil wells in Kansas and one half of the net profits from the sale of crops "for her support and maintenance and for the support, maintenance and educa-

tion of the three minor children of the parties hereto." It provided that in the event of a divorce ". . . this settlement of property rights by and between the parties hereto shall be in lieu of any alimony, either temporary or permanent, suit money or attorneys fees." The divorce decree approved the property settlement and made it a part of the decree. It contained no provision for or reference to alimony or support money.

After the divorce, the wife commenced an action to compel the husband to execute the necessary documents to enable her to secure her share of the oil royalties and the crop rentals. The husband cross-complained seeking a modification of the agreement, alleging a change of conditions in that he had remarried, that two of the children had passed the age of twenty-one years and the third was partially self-supporting, and that his former wife had a substantial income from her business activities. We held that the agreement was just what the parties stated it to be—"a settlement of their property rights."

■ Now what did the parties do here? The husband agreed to pay all current debts of the parties, to convey the home, furniture and family car to the wife; and to convey in trust to the Baker-Boyer National Bank of Walla Walla all of his Walla Walla county farm lands for the purpose of providing an income for her and the children. In consideration thereof, the wife agreed to execute any conveyances and releases necessary to vest the title in the husband to any of the remaining property, free and clear of any right or claim which she might have therein. It was their intention to settle everything in this agreement, so that thereafter he would never be beholden to her nor she to him. They each executed proper and necessary conveyances to the other in order to make the agreement effective and went their separate ways.

When she applied for a divorce, she did not ask for alimony or support money. Those items had already been settled between the parties. All that she asked for was to have the property settlement agreement approved. The

court did this and did not allow any alimony or support money in the decree. The parties and the court treated the agreement as a property settlement. The decree, from which no appeal was taken, established its status as such. See *State ex rel. Lang v. Superior Court*, 176 Wash. 472, 30 P. (2d) 237. Now, ten years later, because of financial reverses, the husband asks us to construe their agreement to be one for alimony and support money, rather than in settlement of their property rights, although the parties themselves construed it to be in settlement of their property rights and executed conveyances in furtherance thereof.

Payments provided for in the agreement of April 29, 1942, were not to be alimony and support money. They constituted a part of the settlement of property rights between the parties. The property settlement agreement, in its entirety, was ratified, confirmed, and approved by the court in the divorce decree. The decree, therefore, cannot be modified.

The decree appealed from is affirmed. Nothing we have said herein, however, is intended to foreclose appellant of his right, if any he may have, to attack the trust agreement of July 15, 1942.

GRADY, C. J., HILL, DONWORTH, and WEAVER, JJ., concur.