CAROL C. RESHETAR v. GARY D. RESHETAR.
GARY D. RESHETAR v. CAROL C. RESHETAR AND OTHERS.

246 N. W. 2d 846.

October 22, 1976—No. 46026.

*Louis M. Reidenberg,* for appellant.
*Arnold E. Schribman,* for respondent Carol Reshetar.

Heard before Peterson, Yetka, and Marsden, JJ., and considered and decided by the court en banc.

PER CURIAM.

Carol Reshetar brought suit against her former husband, Gary D. Reshetar, seeking a declaration of the rights of each in a house owned by the parties, and Gary filed separate suits against Carol for waste and for partition.[1] The cases were consolidated for trial. Gary appeals from the judgment of the district court and from an order denying his motion for a new trial. We affirm.

On April 29, 1969, the district court entered a decree dissolving the bonds of matrimony between the parties. The decree specified that they continue to hold their homestead, a house on Coolidge Street in Min-

---

[1] Hennepin County and The Prudential Insurance Company of America, holder of a mortgage on the premises, were also named defendants in the partition action.

neapolis, in joint tenancy, but that it be placed on the market for sale. The decree also provided that each party be responsible for one-half of the mortgage payments (including interest, insurance, and taxes) made with respect to the Coolidge Street house between the date of the dissolution of marriage and whenever the house might sell. Finally, it provided that the net proceeds from the sale of the house were to be divided equally between the parties, except that Carol was to be guaranteed at least $10,000. Also, in contemplation of the possibility that the net proceeds before division might be less than $20,000, and in order to assure so far as possible that Carol would receive a minimum of $10,000 before Gary received any of the proceeds, the decree specified that in addition to the minimum of $10,000 Carol should be reimbursed for any payments she might make to reduce the principal balance of the mortgage loan.[2]

The house on Coolidge Street did not sell readily, apparently because it was overbuilt for the area. The parties decided to trade it for a house on Rankin Road plus cash, hoping that the Rankin Road property would be more readily salable. On July 30, 1969, the closing date for the trade, the Rankin Road house had not been sold, and Carol moved into that house. The major dispute in the case centers on whether the parties agreed that they would divide expenses for the Rankin Road house in the same way they had, pursuant to the divorce decree, divided the expenses for the Coolidge house.

---

[2] Without this latter provision, if the net proceeds had been less than $20,000, Carol still would have received $10,000, but her principal payments which would have contributed to the accumulation of new equity following the dissolution of marriage would not have been returned, and Gary unilaterally would have enjoyed the value of those payments. For example, if the net proceeds before division had been $18,000 and there had been no principal payments made, Carol would have received $10,000 and Gary $8,000. But if the net proceeds were $19,000 and Carol and Gary each had paid $500 to reduce principal between the date of dissolution of marriage and the date of sale, then without the provision last mentioned Carol still would have received $10,000—a net for her of only $9,500—and her $500 of principal payments would have gone into Gary's share of the proceeds. Of course, this provision was intended to operate only to the extent necessary to give Carol a net share in the proceeds of $10,000; otherwise it would have conflicted with the provision that each party was responsible for one-half of all payments including principal.

Gary testified that he and Carol had agreed Carol would pay all, and not merely half, of the expenses for the Rankin Road house until it sold. Carol testified, to the contrary, that she and Gary had agreed on or near the date of the closing that they would divide the expenses of the Rankin Road house in the same way the decree had specified they should divide the expenses of the Coolidge house. Gary's attorney attempted to impeach Carol's testimony by inquiring about a statement she had made in her deposition that she recalled no conversations with Gary on this topic at any time near the closing date. Carol explained this inconsistency as arising from her not having thought back thoroughly enough when she was first asked about these conversations in her deposition. Indeed, later in the same deposition she had recalled asking Gary near the closing date, "How about half the mortgage payments" for the Rankin Road house and that he had said, "You'll get that money when the property sells."

The testimony was in conflict, and the evidence was sufficient for the district court to believe either of the two parties. Thus, we cannot say that the district court's finding that Carol and Gary agreed to divide the Rankin Road expenses in the same manner they were to have divided the Coolidge expenses was clearly erroneous.

The Rankin Road house was also slow in selling, and after 6 months when the listing contract with a real estate broker expired Carol caused some improvements to be made in that house.[3] While the testimony was not entirely explicit on how much was paid for these improvements and by whom, Carol testified that Gary had contributed cash of between $400 and $550. She testified that she had discussed decorating the property with Gary, and that the two had agreed she would do it and be compensated for both the out-of-pocket expenses and for her time, which she estimated at trial as having been 950 hours.

[3] These improvements included painting the outside of the house; painting the inside of the house; recarpeting the living room, hallway, back stairway, and part of the amusement room; stripping and refinishing all the woodwork; sanding, grooving, pegging, and replacing the hardware on the kitchen cabinets; wallpapering three bedrooms, the bathroom, the kitchen, and the dining room; installing chair rails in the bedrooms; installing a divider in the entryway; installing draperies and drapery rods in the living room and dining room; refinishing 11 or 12 doors; and refinishing the windows. In addition to these improvements a combination door which had blown off was replaced, broken windows were replaced, the water heater was replaced, and at the time of trial Carol planned to replace the broken stove.

Joseph Stanton, a builder and one of Carol's former employers, testified as to the value of the improvements. He itemized the cost of the improvements considered singly, the total of which was approximately $3,500. He testified, however, that considered in toto the improvements increased the value of the Rankin Road house $4,500. The district court found from this evidence that the improvements had increased the value by approximately $4,500, and we cannot say its finding was clearly erroneous.

Gary also attacks the district court's finding that he never accounted to Carol for any part of a $3,109 cash payment which was received from the new owners of the Coolidge house as part of the consideration for that house.[4] Gary collected this money at the closing and used it to repay part of a loan Gary's mother had made to both Gary and Carol. The decree and property settlement, however, had required Gary unilaterally to pay all the marital obligations of the parties, apparently including the loan from Gary's mother. The district court found, therefore, that Gary had never accounted to Carol for any part of the $3,109, and we cannot say this finding was clearly erroneous.

After all the improvements in the Rankin Road house were completed, it was again listed with a real estate broker, and it remained on the market until the fall of 1973. At that time Carol and Gary had a disagreement, and Carol became concerned that if an offer were received on the house, Gary would refuse to accept it. Carol, therefore, instructed her real estate broker that the house be removed from the market. The district court found that by so doing Carol waived her right to claim reimbursement for one-half of the expenses for the Rankin Road house beyond that time. It appears that Gary, as co-owner of the property, had the same right, responsibility, and ability to place the Rankin Road house on the market and search for a buyer as did Carol, but Carol has not challenged the district court's ruling that she waived her right to reimbursement after instructing her own broker to desist from searching for a buyer.

The district court fixed the rights of the parties as of the date Carol removed the Rankin Road house from the market. At that time Carol had lived there some four years and had paid $10,131 for mortgage service, insurance, taxes, and utilities. At the time of trial, taxes in the sum of $1,000.92 were due to Hennepin County, another $3,000 was due to the mortgage company to repay an advance it had made for taxes,

---

[4] Besides this payment there was also a check in the amount of $600 which was never paid because of a dispute with the new owners of the Coolidge property.

and the mortgage balance itself was $18,649. The house was sold shortly after trial.

On these facts, because the district court believed Carol's testimony that the parties agreed to divide expenses for the Rankin Road house equally between themselves, the appropriate disposition was to order that the house be sold and the proceeds distributed as follows:

1. Pay all taxes due                                               $ 1,000.92
2. Repay the mortgage company's
   advance for taxes                                                 3,000.00
3. Pay principal amount of mortgage                                 18,649.00
4. Pay any expenses for sale of house
5. Divide the remainder of the proceeds equally between
   the parties, then from Gary's share reimburse Carol for
   one-half of the $3,109 received as consideration for the
   Coolidge property and for one-half of principal, interest,
   taxes, insurance, utilities, and improvements.

The district court's order was in accord with this disposition except that instead of directing that the reimbursement for the items listed in step 5 above be deducted from Gary's share of the proceeds, it inadvertently called for this payment to be deducted from the joint proceeds before division, which would not have given Carol full credit for those amounts which Gary owed her. Also, the court inadvertently included in the payment to be made to Carol not just half but all of the principal payments she had made. It appears, however, that the house sold for net proceeds of substantially more than $20,000, so that Carol's share was above $10,000 and she was thus not entitled to reimbursement of more than one-half of her principal payments. Finally, the court inadvertently failed to give credit to Gary for the $400 to $550 he had already paid for the improvements. It appears that had these computational errors been corrected, the district court would have awarded Carol a greater share of the proceeds than it did, but Carol has not appealed or otherwise sought review of the judgment of the district court.

Finally, Gary contends that the declaratory judgment rendered in this case is actually a modification of the previous decree and is thus an impermissible means of resolving the parties' dispute. As we said in Bengtson v. Setterberg, 227 Minn. 337, 346, 35 N. W. 2d 623, 627 (1949), "[r]ights under a decree, when left in doubt, are within the purview of the declaratory judgments act * * *." Even so, the finding of the district court was not that the original decree extended to the rights and responsibilities of the parties with respect to the Rankin Road house; the court found that the parties themselves had entered an independent

agreement in which they simply adopted for themselves the terms of the original decree. Certainly declaratory judgment is appropriate to resolve the issue of what the parties agreed.

Gary also contends that Carol is estopped from claiming that the terms of the decree were to govern the Rankin Road property because she did not protest his failure to pay half of the Rankin Road expenses, did not pay all of her share of these expenses, and took the property off the market—conduct he contends was "inconsistent" with an agreement that the decree was to apply to the property. We find neither inconsistency nor any reason why Carol should be estopped from claiming the agreement.

Gary's claim for waste was based principally on Carol's failure to promptly pay all taxes. These taxes were to be paid from the proceeds of the house, however, so this failure caused no injury to Gary such as he would have sustained if, for example, Carol had allowed the house to deteriorate.

No attorneys fees or costs are allowed to either party.

Affirmed.