[No. 52927–2. En Banc. July 16, 1987.]

PAULINE BYRNE, *Respondent*, v. WILLIAM ACKERLUND, *Petitioner.*

*Oles, Morrison, Rinker, Stanislaw & Ashbaugh,* by *Pamela D. O. Larson,* for petitioner.

*James L. Vonasch,* for respondent.

GOODLOE, J.—This case involves the validity and interpretation of a dissolution decree which awarded a parcel of real property to one spouse and liens on that property to the other spouse. The decree provided that the liens would be payable upon the sale or transfer of the property. The Court of Appeals determined the decree was defective for failure to finally and definitely dispose of all marital property and held that finality requirements could only be satisfied by interpreting the decree to require sale of the property within a reasonable time. *Byrne v. Ackerlund,* 44 Wn. App. 1, 719 P.2d 1363 (1986). We reverse.

In 1972, the King County Superior Court entered a decree of dissolution for respondent Pauline Byrne and petitioner William Ackerlund. The decree incorporated a property settlement agreement awarding a parcel of real property to Ackerlund. The decree also awarded a judgment of $2,500 to Byrne and granted her a lien on the property to secure the judgment. The decree stated that the lien was "payable upon the voluntary or involuntary transfer or disposition of the said realty by [Ackerlund]." Clerk's Papers, at 23. The property settlement agreement contained substantially the same language as the decree and included a stipulation that Byrne additionally receive "one-half of the excess of the net proceeds of the sale or other disposition of the said realty over $16,500 for which . . . [she] shall be awarded a lien on the above described real property." Clerk's Papers, at 26. The property settlement agreement was drafted by Byrne's attorney. Ackerlund was not represented by separate counsel.

In 1982, Byrne filed a complaint seeking a declaratory judgment that the terms of the dissolution decree entitled

her to an accounting and partition of the property to satisfy her liens. Byrne argued that a declaratory judgment was a proper action to establish her rights under the decree and that, in light of the statutory requirement that property be fully disposed of in a dissolution, the decree should not be interpreted to allow the parties' interests to remain tied together indefinitely. She requested the court to interpret the decree and property settlement agreement as requiring the sale of the property, or satisfaction of her liens, within a reasonable time. Byrne also argued that her ability to force a sale of the property was contemplated by the decree's provision for "involuntary" transfer.

Ackerlund, in turn, argued that the language of the decree did not require him to sell the property or to satisfy the liens within any given time period. Thus, he asserted, interpretation through a declaratory judgment action was unnecessary and improper. Ackerlund also argued that the decree was res judicata and could not be modified under the guise of interpretation. Finally, Ackerlund argued that the decree's provision for involuntary transfer contemplated only transfer by third parties and did not empower Byrne to force a sale of the property.

Neither party presented the trial court with any extrinsic evidence as to their intent at the time the property settlement agreement was executed. Both sought summary judgment in the trial court relying solely on the language contained in the decree and settlement agreement.

The trial court granted Ackerlund's motion for summary judgment and dismissed the action. The Court of Appeals reversed. The Court of Appeals determined that the trial court in the original dissolution action had erred by incorporating the terms of the property settlement agreement into the dissolution decree. The court determined that the terms of the agreement violated the requirement that property be disposed of in a manner that finally and definitely determines the interests of the parties. *Byrne,* at 4. The court further determined that because the decree did not fix a time for sale, a reasonable time would be implied.

The court concluded that a reasonable time had passed since the entry of the decree, and directed the trial court to "determine a deadline for the sale of the property, or in the alternative, an accounting and satisfaction of Byrne's liens." *Byrne,* at 5–6. We granted Ackerlund's petition for discretionary review.

The issue before this court shall be addressed in three parts as follows:

1. Was the dissolution decree defective for failure to finally and definitely dispose of all marital property?

2. Is the dissolution decree now subject to interpretation by declaratory judgment?

3. May the court imply an obligation not contained in the original dissolution decree?

We answer each of these questions in the negative.

I

DEFECTIVE DECREE?

Initially, we note that prior to the enactment of Laws of 1973, 1st Ex. Sess., ch. 157 (the present dissolution statute), provision for the entry of a divorce decree was contained in RCW 26.08.110 (Laws of 1949, ch. 215, § 11, p. 701). Since the dissolution in this case took place in 1972, the former statute governs. *Lang v. Lang,* 40 Wn. App. 758, 762, 700 P.2d 375 (1985); *see also Wagner v. Wagner,* 95 Wn.2d 94, 98, 621 P.2d 1279 (1980). Both parties, along with the Court of Appeals, have erroneously relied on a successor provision, RCW 26.09.080. However, this oversight is not significant as the relevant portions of the current dissolution statute are similar to and have been construed consistently with the former RCW 26.08.110. *See In re Marriage of Little,* 96 Wn.2d 183, 190–94, 634 P.2d 498 (1981).

RCW 26.08.110 required the court in a divorce proceeding to make "such disposition of the property of the parties, either community or separate, as shall appear just and equitable". As interpreted, this statute established a duty on the part of the trial court to dispose of all property brought to its attention. In addition, it gave to the parties

in a dissolution action the right to have their respective interests in property "definitely and finally determined", without the prospect of future litigation. *Shaffer v. Shaffer,* 43 Wn.2d 629, 631, 262 P.2d 763 (1953); *accord, Bernier v. Bernier,* 44 Wn.2d 447, 267 P.2d 1066 (1954).

In the present action, the Court of Appeals held that the trial court in the original dissolution action had failed to meet the requirements of the statute. The court reasoned that by not providing a definite time for sale, the decree left the parties in a situation where their interests would be tied together indefinitely. Thus, the dissolution court had failed to dispose of the property so as to definitely and finally determine the parties' respective interests. *Byrne,* at 4.

In reaching this conclusion, the Court of Appeals relied on *Shaffer,* which held that the dissolution court had failed to perform its statutory duty when it awarded certain property to the parties as tenants in common. *Shaffer* noted that where community property is not disposed of by the trial court, it also passes to the former spouses as tenants in common. *See, e.g., Olsen v. Roberts,* 42 Wn.2d 862, 864, 259 P.2d 418 (1953). The *Shaffer* court reasoned that if it is improper to leave the parties as tenants in common by judicial failure to act, it is likewise improper to do so by decree. The court was also concerned that the decree left the parties with the prospect of future litigation to decide their respective interests in the property. *Shaffer,* at 630–31.

 Reliance on *Shaffer* in this case is inappropriate. First, the lien/title arrangement incorporated into the dissolution decree is different from the tenancy in common disposition found in *Shaffer.* Here, the parties are not left in the same situation as if the trial court had simply failed to dispose of the property.

Second, a lien/title division of interests is less likely to lead to future litigation. Tenancy in common is a form of co–ownership involving equal rights to possession, enjoyment, and income from the property. This form of co–

ownership also imposes certain fiduciary duties between the tenants. 86 C.J.S. *Tenancy in Common* §§ 17–25 (1954). The possibility of animosity between divorced tenants creates a likelihood that litigation may be necessary in order to finally dispose of the property or otherwise terminate the tenancy in common relationship. In contrast, where one party holds title and the other a lien, the parties' respective interests are more removed. A lien is merely an encumbrance to secure an obligation and involves no characteristics of co–ownership. *See Swanson v. Graham,* 27 Wn.2d 590, 597, 179 P.2d 288 (1947). Where, as here, the value of the lien is fixed at a specific dollar amount or by mathematical formula and is enforceable only upon the occurrence of a particular event (the voluntary or involuntary sale of the house), the prospect that future litigation will be necessary to finally determine the respective interests of the parties is less likely.

Naturally, a lien/title property division can lead to disputes and future litigation in that the party who is given title can prevent the other from ever collecting upon the lien by simply not selling the property. Yet this is a prospect the parties can readily contemplate and address when drafting their property settlement agreement. Indeed, divorcing parties may perceive mutual advantages in a lien/title form of disposition. Where, for example, the parties' principal wealth consists of equity in a home, this arrangement may be the only practical means of dividing that wealth without forcing a sale of the property. Since a home often possesses value beyond pure economic value to its owners, the parties to a dissolution may both wish to avoid a forced sale and accordingly compensate the party who does not obtain title. The Court of Appeals failed to take into account the possibility that Ackerlund may have relinquished other valuable rights and benefits to Byrne in return for being allowed to hold title to the real property indefinitely. Applying *Shaffer* to this case would have dangerous implications. It would severely impede spouses' freedom to contract for mutually advantageous property

settlements and would effectively require dissolution courts to order the sale of principal assets by some particular date, a practice this court has previously frowned upon. *See High v. High,* 41 Wn.2d 811, 822, 252 P.2d 272 (1953).

Yet another factor distinguishes this case from *Shaffer*. In *Shaffer* the parties did not voluntarily agree to hold their interests as tenants in common; that disposition was chosen for them by the trial court. Here, by contrast, the parties entered into a voluntary and mutually beneficial arrangement. Byrne now argues that the dissolution decree awarded her nothing of concrete value. In truth, Byrne received a considerable disposition: $2,500 plus half the net proceeds over $16,500 from the sale of the home. She also received the family car and other financial remuneration. Ackerlund agreed to pay all future mortgage debt. It may be inappropriate for a dissolution court to order a lien/title division of property where the parties have not agreed to it and the possibility of future strife is great. However, *Shaffer* does not prevent a court from accepting such an arrangement in effectuating the parties' intent.

Much of the difficulty in this case stems from *Shaffer's* language that the respective property interests of the parties must be "definitely and finally determined". *Shaffer,* at 631; *see also Little,* at 190. This court has never clarified exactly what constitutes a definite and final determination. We believe that the *Shaffer* requirement is satisfied by a specific disposition of each asset which informs the parties of what is going to happen to the asset and upon what operative events, *e.g.,* that a set sum or formula of money will be paid upon the sale of certain property. *See generally Yeats v. Estate of Yeats,* 90 Wn.2d 201, 205, 580 P.2d 617 (1978). The trial court is not required to do the impossible in attempting an exact determination of *all* aspects of one's interests. The Court of Appeals was concerned that Byrne will not know the exact value of her liens until there is a definite time for sale. But it is a common, and surely acceptable, practice for divorcing spouses to agree to divide the proceeds from the sale of certain property without

knowing what the exact value will be at the time of sale. Property settlement agreements are to be examined by the trial court for general fairness, *See Yeats,* at 205; it is not necessary to set a fixed deadline and value for each item of disposition. We conclude that the dissolution decree at issue here was sufficiently final and definite in its disposition of the parties' property.

## II
### INTERPRETATION BY DECLARATORY JUDGMENT?

In his brief to the Court of Appeals, Ackerlund argued that the terms of the dissolution decree were clear and unambiguous, and therefore, the decree was not subject to interpretation through a declaratory judgment action. *See In re Marriage of Mudgett,* 41 Wn. App. 337, 704 P.2d 169 (1985). The Court of Appeals, however, did not address this issue, electing instead to rest its analysis on the requirement that a trial court in a dissolution proceeding make final and complete disposition of all property before it. *See Shaffer v. Shaffer, supra.* The court acknowledged that its result was in conflict with that reached on nearly identical facts by a different panel of the Court of Appeals in *In re Marriage of Mudgett, supra.*

In *Mudgett,* the trial court had entered a decree of dissolution, incorporating a property settlement agreement which awarded the marital residence to the wife "'[s]ubject to a non–interest bearing lien in favor of the husband to be paid when the residence is sold.'" *Mudgett,* at 338. There was no provision setting a date by which the residence had to be sold. Three years later Mr. Mudgett brought an action for partition of the property and declaratory relief. In affirming a dismissal of the action, the Court of Appeals held that declaratory judgment was not available to question an unambiguous divorce decree, such as the one at issue, and that Mr. Mudgett was collaterally estopped from contesting the decree's provisions. *Mudgett,* at 340–43.

The Court of Appeals in the present case did not directly dispute the holding in *Mudgett.* However, it concluded that

*Mudgett* had fallen short in its analysis by failing to address the trial court's duty to finally and definitely dispose of all property brought to its attention. *Byrne v. Ackerlund,* 44 Wn. App. 1, 5 & n.2, 719 P.2d 1363 (1986). We disagree.

██ A property settlement agreement incorporated into a dissolution decree that was not appealed cannot be later modified. *Valaer v. Valaer,* 45 Wn.2d 565, 570, 277 P.2d 326 (1954); *see* RCW 26.08.110 (repealed by Laws of 1973, 1st Ex. Sess., ch. 157); *cf.* RCW 26.09.170 (current provision). Nevertheless, the decree, or agreement merged therein, may be subject to a declaratory action to ascertain the rights and duties of the parties. *Mudgett,* at 340; *see also Reshetar v. Reshetar,* 310 Minn. 563, 246 N.W.2d 846 (1976). *But see Mills v. Mills,* 512 P.2d 143, 148 (Okla. 1973). A declaratory action is proper only where the language of the decree is ambiguous, *Mudgett,* at 340–41; *Royal v. Royal,* 246 Ga. 229, 271 S.E.2d 144 (1980), or where a party seeks to divide property not disposed of by the trial court at the time of dissolution. *See Ross v. Pearson,* 31 Wn. App. 609, 614, 643 P.2d 928 (1982). A declaratory judgment action is not proper where there is no ambiguity in the decree or where a party seeks relief based upon unilateral mistake, unconscionability or public policy. *Mudgett,* at 341.

In the present case, the Court of Appeals did not address the issue of whether the decree was subject to interpretation by a declaratory action. The court made no determination that the decree was ambiguous, and Byrne herself made no such claim. During oral argument Byrne suggested that ambiguity exists in the use of the words "voluntary or involuntary transfer". Byrne claims, and Ackerlund denies, that this language grants Byrne the right to force a sale. We find no ambiguity, as we reject Byrne's interpretation. To recognize a right of forced sale in Byrne would render the property settlement agreement meaningless; there would be no benefit to Ackerlund in obtaining title to the real property if Byrne could force a sale at any time. Where one

construction would make a contract unreasonable, and another, equally consistent with its language, would make it reasonable, the latter more rational construction must prevail. *Messersmith v. Messersmith,* 68 Wn.2d 735, 739, 415 P.2d 82 (1966). The only rational construction of "involuntary" suggests that the parties were contemplating third party foreclosure or similar events. If Byrne had intended to have the power to force a sale of the property, the agreement, which was drafted by her attorneys, should have specifically provided for such. *Cf. In re Marriage of Young,* 44 Wn. App. 533, 723 P.2d 12 (1986) (party has no right to interest on lien award if not so specified in the dissolution decree). The meaning of "involuntary transfer" is clear enough; it does not grant Byrne the right to force a sale.

In *Mudgett,* at page 341, the Court of Appeals held there was no ambiguity in a separation contract which made the former husband's lien on a residence payable "'. . . when the residence is sold.'" The court did not speculate on whether such plain language might be construed as granting the lienholder the right to force a sale. As in *Mudgett,* the problem here is not one of ambiguity but rather unilateral mistake. The fact that Byrne may have believed the effect of her agreement to be different than it actually is does not justify the court in setting aside or rewriting the contract for her. *See Vance v. Ingram,* 16 Wn.2d 399, 411, 133 P.2d 938 (1943).

Byrne argues that a declaratory action is appropriate here because the dissolution court failed to fully and definitely dispose of the property in question as required under *Shaffer.* In light of our resolution of the first issue, we find this argument to be without merit. In any event, error in the entry of the original decree should be appealed; it is not a proper basis for a declaratory action. *See In re Marriage of Little,* 96 Wn.2d 183, 197–98, 634 P.2d 498 (1981); *see generally Alabama Pub. Serv. Comm'n v. AAA Motor Lines, Inc.,* 272 Ala. 362, 131 So. 2d 172, *cert. denied,* 368 U.S. 896, 7 L. Ed. 2d 93, 82 S. Ct. 173 (1961). Byrne's position in this case, if adopted, would serve to modify the dis-

solution decree and property settlement agreement. This is an inappropriate use of a declaratory judgment action. Moreover, since Byrne did not originally contest the decree in the dissolution proceeding, she is collaterally estopped from doing so now. *See Mudgett,* at 342–43.

## III
### IMPLIED PERFORMANCE DEADLINE?

Where the language of a dissolution decree is properly subject to interpretation, the construction of the decree and any contract incorporated therein is a question of law. *In re Marriage of Gimlett,* 95 Wn.2d 699, 704–05, 629 P.2d 450 (1981). Interpretation by the reviewing court must be based upon the intent of the parties as reflected in the language of the agreement. *Kinne v. Kinne,* 82 Wn.2d 360, 362, 510 P.2d 814 (1973). The court may not add to the terms of the agreement or impose obligations that did not previously exists. *Mudgett,* at 341; *see also Schoenwald v. Diamond K Packing Co.,* 192 Wash. 409, 419–20, 73 P.2d 748 (1937). Nor can a court make a contract for the parties based upon general considerations of abstract justice. *Wagner v. Wagner,* 95 Wn.2d 94, 104, 621 P.2d 1279 (1980).

In the present case, the Court of Appeals interpreted the decree so as to create a new agreement. Having determined that the decree, as written, violated Byrne's right to a final disposition, the court concluded that the only means of satisfying that right was to read into the decree a definite time for performance of the sale. Then, using general contract construction principles, the court implied a reasonable time for the sale of the property. *See Byrne,* at 5.

The Court of Appeals should not have interpreted the dissolution decree because it was not a proper subject of a declaratory judgment action. Beyond this, we find error in the court's interpretation. Under contract principles, a reasonable time for performance of an obligation may only be implied where the contract imposes a definite obligation but fails to provide a time for its performance. *See Foelkner v. Perkins,* 197 Wash. 462, 85 P.2d 1095 (1938). Here,

the decree imposed on Ackerlund no obligation whatsoever to sell the property. Rather, Ackerlund's sale of the property can appropriately be viewed as a "condition precedent" to the accrual of Byrne's right to enforce payment on her liens. *See Partlow v. Mathews,* 43 Wn.2d 398, 406, 261 P.2d 394 (1953). *See also Huber v. Coast Inv. Co.,* 30 Wn. App. 804, 638 P.2d 609 (1981). Until the occurrence of the requisite real property disposition, Ackerlund is not obligated to pay Byrne. While it may be proper to imply a requirement of payment within a reasonable time *after* the real property is sold, it is wrong to judicially impose a performance deadline on an unripe obligation. In requiring payment within a reasonable time, and then determining that a reasonable time had already passed, the Court of Appeals improperly imposed on Ackerlund an obligation not originally contained in either the decree or property settlement contract.

## CONCLUSION

In sum, we hold that the dissolution decree was not defective and that it was error to alter the parties' contractual obligations by implying a requirement of performance within a reasonable time. Byrne's position, if adopted, would modify the dissolution decree, and a dissolution decree is not subject to modification through a declaratory action. We reverse the Court of Appeals and uphold the trial court's dismissal of Byrne's action and award of summary judgment in favor of Ackerlund.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, and CALLOW, JJ., concur.

DORE, J. (dissenting)—The majority holds that Pauline Byrne cannot enforce certain liens on property awarded to her former husband, William Ackerlund, in a prior dissolution action. Instead, she must wait until Ackerlund chooses to sell the property, if he does, before she can recover the money due her pursuant to the terms of the decree. This decision is inconsistent and at odds with this court's prior

decisions. I dissent.

FINAL DISTRIBUTION OF PROPERTY

At the time of divorce, the trial court is statutorily required to make a full and fair distribution of all property the divorcing couple brings to the court's attention. RCW 26.09.080. The court abuses its discretion if it does not make such a distribution. *Shaffer v. Shaffer,* 43 Wn.2d 629, 631, 262 P.2d 763 (1953). Moreover, the parties have the right to have their respective interests definitively determined, without need of further litigation. *In re Marriage of Little,* 96 Wn.2d 183, 194, 634 P.2d 498 (1981).

It is apparent that Byrne's and Ackerlund's interests in the incumbered property are indefinitely linked. Byrne cannot realize the amount she is owed until Ackerlund chooses to sell the property, and Ackerlund, of course, has no incentive to do so. Without some means of compelling the sale, Byrne has not had her interests fully and finally settled. I agree with the Court of Appeals that a definite time for Ackerlund to sell the property (or if he chooses, to pay Byrne the value of her liens) must be read into the agreement. *Byrne v. Ackerlund,* 44 Wn. App. 1, 5, 719 P.2d 1363, *review granted,* 107 Wn.2d 1001 (1986).

The majority, however, asserts that "a reasonable time for performance of an obligation may only be implied where the contract imposes a definite obligation but fails to provide a time for its performance." Majority, at 455. I agree. I disagree, however, with the majority's view that Ackerlund has no obligation whatsoever to sell the property. Obviously he must have that obligation, as otherwise the liens awarded to Byrne are worthless.

I recognize the majority's concern that a lien/title disposition of property may be preferable to a forced sale of the family home. Majority, at 450. I do not believe, however, that imposing a reasonable time on one spouse precludes this sort of arrangement. Rather, the spouses can agree to use a lien/title arrangement for a definite (or reasonable) amount of time, after which the title holding spouse must

458

either sell the property or obtain financing to satisfy the other spouse's interest. In this way, future litigation is avoided, a more beneficial property division is obtained, and each spouse has a fair and definitive division of the property.

CONCLUSION

I therefore dissent to the majority opinion, which accomplishes none of these objectives. As a result of the majority opinion, the parties here (a) have not avoided litigation, (b) have not obtained a mutually beneficial division of their property, and (c) Byrne has not had a fair and definitive division of the property.

I would require Ackerlund to either sell the property or pay Byrne the fair market value of her liens. Only by this action can the parties have their interests definitively and finally resolved.

DURHAM, J., concurs with DORE, J.

Reconsideration denied September 15, 1987.