[No. 30653-7-I.  Division One.  February 7, 1994.]

*In the Matter of the Marriage of* KAREN TRUBNER-BIRIA, *Respondent, and* ALI BIRIA, *Appellant.*

*Michael Green* and *Davis Wright Tremaine,* for appellant.

*Jill A. Salmi,* for respondent.

GROSSE, J. — Ali Biria (Ali) appeals a contempt order for his alleged noncompliance with a provision in a decree of dissolution. Specifically, the trial court ordered that Ali not occupy the former family home pending its sale under a property settlement agreement despite the fact that his former wife, Karen Trubner-Biria (Karen), has been paid in full for her interest and has quitclaimed that interest to him. In addition, the trial court set a date by which the house must be sold, and awarded attorney fees to Karen. We reverse, holding that Karen no longer has any interest in the property subject to protection through the judicial process.

The marriage between Karen and Ali was dissolved in 1991. The dissolution decree incorporated a property settlement agreement, signed in December of 1990, dividing the property of the parties. With recognition of the fact that Karen and Ali owed approximately $100,000 to Ali's father, Abdul Biria, the agreement sought to "irreparably divide certain community property and satisfy certain claims" prior to execution of a separation agreement or entry of a decree of dissolution. The agreement was signed by Karen, Ali, Abdul Biria, and respective counsel. The agreement set forth the parties' intent to sell the house as soon as possible, subject to approval of Abdul Biria. After satisfying obligations to Karen in the amount of $25,000, the balance of any sales price was

to be paid to Abdul Biria in satisfaction of his $100,000 claim against the community. The parties were not to live in the house pending sale. The house was to be listed and an aggressive effort made to sell it as soon as possible. However, even if the house did not sell right away, payment of the $25,000 was to be made to Karen in two installments on dates certain. Once Karen had been paid, she was to quitclaim her interest to Ali. The agreement specifically set out that the sales price and the terms of any sale were "subject solely to the direction of Abdul Biria".

The house did not sell but Karen was timely paid her $25,000 interest in the house. Ali did not live in the house for 10 months. However, after Karen was paid in full, the house was reconveyed to him giving him clear title. Ali moved back into the home to avoid paying both the mortgage and rental on an apartment. Karen did not approve and brought an action for contempt based on an alleged breach of the agreement.

In the affidavit accompanying her motion, Karen indicated she was initially given temporary possession of the house. However, Ali indicated he could not pay the mortgage, child support, and rent on an apartment, and sought to force a sale. Karen fully acknowledged that Ali's father, Abdul Biria, was in a position to sue to get his money from the house. Because of the interests involved, the parents of the couple negotiated a settlement "pursuant to which [Karen] would leave the house and would be paid $25,000, and Ali and his father would release [Karen] from liability and sell the house."

According to Ali, he could not afford to pay the mortgage on the house, rent on an apartment, and child support. The housing market was depressed and his father did not want the house to sell until he could recoup his investment. The property is subject to a $93,000 mortgage, and the asking price is $229,000, a sum Karen believes to be $20,000 to $30,000 too high. Karen argues the delay is a ruse to allow Ali to stay in the home. She does not want her former husband to take their child to the former "family home".

■ The trial court erred in ordering Ali to vacate a home which is now, by operation of law, his separate property. Under the settlement agreement, which was incorporated into the decree, the home became Ali's separate property upon Karen's execution and delivery of a quitclaim deed. Once the agreement was satisfied, Karen had no further interest in the home. *See* RCW 26.16.050.

A trial court does not have unfettered discretion to compel the sale of property in a dissolution of marriage. *See High v. High*, 41 Wn.2d 811, 252 P.2d 272 (1953); *Arneson v. Arneson*, 38 Wn.2d 99, 227 P.2d 1016 (1951). *Cf. In re Marriage of Sedlock*, 69 Wn. App. 484, 849 P.2d 1243 (a fact-specific case in which this court distinguished *High* and *Arneson* but did not overrule them), *review denied*, 122 Wn.2d 1014 (1993).

While deference is usually given to the terms agreed to in a property settlement agreement, there are limits upon the effect that will be given a property settlement agreement by a court. *See Byrne v. Ackerlund*, 108 Wn.2d 445, 739 P.2d 1138 (1987). Here, as in *Byrne*, there was nothing in the agreement stating the sale of the home had to be immediate. In fact, though the parties may have anticipated a quick sale, they left the final say to their biggest creditor and third party to the agreement, Abdul Biria.

The principal issue in *Byrne* was to what extent trial court discretion in the distribution of marital property was restricted by the requirement that a trial court make a definite and final distribution so as to avoid the prospect of future litigation. While the *Byrne* court held the award of title subject to a lien with no set date for sale to not violate the statutory and judicial mandate of finality, it did not retreat from the rule. To permit enforcement of a provision of a decree with respect to property in which one party no longer has any interest due to compliance with other provisions of the decree, *i.e.*, payment in full, certainly burkes the requirement of a full and final distribution and the reasons for that rule.

In this case all financial obligations of the husband to the wife have been paid in full. The wife no longer has any finan-

cial or legal interest in the house. Karen's affidavit below, and the brief before this court, indicate her objection to Ali remaining in the house is based on allegations that there would be psychological injury to her son if Ali is allowed to keep the "family home" and take their son to it for visitation. This issue is better addressed, if at all, under the dispute resolution provisions of the decree of dissolution and in terms of visitation. The issue of what is in the best interests of the child of the parties is not a property settlement dispute and should not be made to be so.

The decision of the trial court is reversed.

WEBSTER, C.J., and SCHOLFIELD, J., concur.