IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No.  37225-1-III |
| CATHY ANN KEELE | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| BRIAN DOUGLAS KEELE, | ) | |
| | ) | |
| Respondent. | ) | |

STAAB, J. — Cathy Long (formerly Keele) filed for divorce under circumstances

that preclude peaceful cooperation or agreement between the parties.  The trial court

awarded custody of the children to Brian Keele along with a majority of the marital assets

and denied child support to Mr. Keele and maintenance to Ms. Long.  In the final divorce

decree, the court ordered that the parties' business entity and real properties be held

jointly as tenants in common.  Under the terms of the tenancy in common, Brian Keele

maintains exclusive possession and management of the business and properties.  Cathy

Long cannot use or possess the real properties, avail herself of sale, refinance to buy-out

her interest, or partition, for nine years for the residence and sixteen years for the

commercial property. Ms. Long appeals the final decree arguing that the trial court failed to complete the marital distribution by erroneously imposing a tenancy in common that causes her harm. We reverse and remand.

FACTS

After 14 years of marriage, Cathy Long filed for divorce on June 5, 2017. The case went to trial in May 2019, and both parties were represented by attorneys. The issues at trial included custody of the parties' two children, child support, property division, and spousal maintenance. The case presented significant issues for the trial court. Both children had been diagnosed with disabilities that neither parent was well-equipped to handle. In the end, however, the court awarded full custody of the children to Mr. Keele. The Court did not require Ms. Long to pay child support, but Mr. Keele does receive SSDI[1] money on behalf of the two children.

While the community property was significant, much of it was tied up in the parties' business and real estate holdings. At trial, Cathy Long testified that she is 53 years old and disabled. She receives approximately $1,250 per month in SSI[2] and works part-time, making between $500 and $850 a month as a substitute teacher.

Brian Keele testified that his income is derived from the parties' business, Queensgate Garden. Mr. Keele testified that the business generally operated at a loss but

---

[1] Social Security Disability Insurance.
[2] Supplemental Security Income.

2

was worth $25,210, based on a business valuation that he commissioned. Mr. Keele

testified that he generally drew $2,500 per month as income but acknowledged taking

significantly larger draws during the pendency of the divorce.[3] He also acknowledged

that he had not paid any real estate property taxes or filed personal, marital, or business

income tax returns since 2016.

Mr. Keele testified that the commercial property was appraised at $663,750.

Apparently, there was also an appraisal of the residence, but this value is not included in

the record. Likewise, the value of other assets, including financial accounts, is not part of

the record on appeal. The findings of fact entered by the trial court did not provide a

value for any of the community property. The court did find that the parties had no

mortgages and no debt.

In its oral ruling, the trial court deviated from the property division factors under

RCW 26.09.080 as not exclusive and considered the needs of the children as the primary

factor. The court intended the real properties to provide "short-term" housing and

income for the children while providing Cathy a "heritable" one-half "interest that she

can look to in the future on the property." Clerk's Papers (CP) at 492. In order to

effectuate this plan, the court's oral ruling provided that:

> As to Queensgate Gardens, including the business property and personal
> property thereon and the residence, same resolution. They are, they go to

---

[3] The evidence on the business income is not clear because the parties referred to
exhibits throughout the trial that were not transmitted on appeal.

Mr. Keele with a one-half interest that's (inaudible) that is, that ripens on sale as a separate property award, as an award to Mrs. Keele.

CP at 491. The court later clarified that the value of Ms. Long's one-half share of the properties would be determined at the time of sale but did not provide a deadline for liquidating Ms. Long's interest. While the court characterized Ms. Long's interest as heritable, it did not indicate in its oral ruling that the properties should be held as tenants in common.

Instead, the concept of a tenancy in common was inserted in the final divorce decree by Mr. Keele's attorney. Specifically, the decree provides:

These properties as well as the business entity known as Queensgate Gardens, are ordered to be held and owned by the parties as tenants in common; however, neither party may sell their share without the consent of the other party. The Husband shall have exclusive use and possession of the properties and shall maintain them as a reasonably prudent owner, including an obligation to maintain taxes, (including any past due property taxes), insurance, and utilities. The Husband may list any of the properties' for sale, and shall have exclusive decision making regarding all aspects of the property and specifically with regard to a decision to sell the entirety of either property. In the event of a sale, the parties shall share the net proceeds from such sale 50/50. The court shall retain jurisdiction over said property and the parties' co-ownership thereof. This shall include the court's ability to hear matters related to financing, improvements, and future "buy-out" of the Wife's interest in the properties.

CP at 38.[4]

---

[4] The decree of dissolution transmitted to this court includes the signature of the judge, but not the attorneys or the parties. It is not clear from the record whether there was a hearing for presentation of this order, and whether there were any objections to its language.

4

Ms. Long moved for reconsideration, arguing among other things, that the tenancy in common failed to distribute the property within a specific time period and was inconsistent with Mr. Keele's exclusive possessory interests. In his response, Mr. Keele admitted that the tenancy in common was not considered by the trial court, but created by counsel while drafting the decree of dissolution to effectuate the court's goal of providing a heritable undivided interest. Counsel admitted that while different methods could have been utilized, any objection to the tenancy in common was "nothing more than an argument over semantics." CP at 560.

In response to Ms. Long's motion, the court modified the decree of dissolution, adding an additional paragraph pertaining to the parties' property division:

> As to the Petitioner's equity in the residence, she may elect to require Respondent to sell or refinance on the youngest child's 23rd birthday, she may make the same election with respect to the business on the youngest child's 30th birthday. In so doing, the Court balances her reasonable interest in accessing this equity with the need to provide for both children and in particular considers the challenges faced by the youngest child to become self-sufficient.

CP at 73, 50-51. At the time this order was entered, the parties' youngest child was 13 years old. The court did not make findings that either child would need financial assistance or continue to be dependent after reaching maturity.

## ANALYSIS

Ms. Long appeals, arguing that the court's distribution of their ownership interests, from community property to tenants in common, fails to adequately and timely distribute

the property of the marriage. Mr. Keele responds, pro se, that he is not in favor of a tenancy in common and would prefer a lien/title ownership arrangement, but otherwise argues that the distribution by tenancy in common was just and equitable.

This court will affirm a dissolution property distribution unless there is a manifest abuse of discretion. *Brewer v. Brewer*, 137 Wn.2d 756, 769, 976 P.2d 102 (1999). The trial court is in the best position to assess the parties' assets and liabilities and determine what is "fair, just and equitable under all the circumstances." *Id*.

One of a trial court's statutory duties in a dissolution case is to dispose of the parties' properties and liabilities. RCW 26.09.080. In a dissolution matter, the court has a duty to dispose of all the property of the parties before it, *Shaffer v. Shaffer*, 43 Wn.2d 629, 630, 262 P.2d 763 (1953), and the parties have a right to have their property interests definitely and finally determined. *Bernier v. Bernier*, 44 Wn.2d 447, 449, 267 P.2d 1066 (1954). The requirement to "definitely and finally determine" property interests of the parties is satisfied by a specific disposition of each asset, which informs the parties of what is going to happen to the asset and upon what operative events that a set sum or formula of money will be paid upon the sale of certain property. *Byrne v. Ackerlund*, 108 Wn.2d 445, 451, 739 P.2d 1138 (1987).

While a trial court has broad discretion to make a just and equitable division of property, the courts disfavor tenancies in common as a means of dividing the marital estate because it tends to leave the parties in the same position as if no distribution had

6

occurred. In *Shaffer* the Washington Supreme Court found that the trial court failed to perform its statutory duty by awarding a residence to the divorcing couple as tenants-in-common with no direction that the apartment house be sold. *Shaffer*, 43 Wn.2d at 630. When a trial court fails to dispose of community property in the dissolution, it necessarily passes to the former spouses as tenants in common. *Id.* The "*Shaffer* court reasoned that if it is improper to leave the parties as tenants in common by judicial failure to act, it is likewise improper to do so by decree." *Byrne v. Ackerlund*, 108 Wn.2d at 449.

In *Bernier*, the trial court awarded the family home to the divorcing couple as tenants-in-common, with the wife having sole rights to occupancy and rental income with taxes and insurance costs being shared by the parties until she remarried or their child grew up. *Bernier*, 44 Wn.2d at 448-49. The Supreme Court found the same error (failure to distribute the residence) existed as in *Shaffer* and reversed the trial court regarding the tenancy in common and remanded for distribution. *Id.* at 449.

The *Shaffer* case was re-examined in *Byrne v. Ackerlund*. In *Byrne*, the trial court adopted the parties' settlement agreement that awarded a parcel of real property to the husband with a judgment in favor of the wife, secured by a lien on the real property. The decree provided that the lien was "'payable upon the voluntary or involuntary transfer or disposition of the said realty by [Ackerlund],'" but failed to provide a deadline for cashing out the wife's interests. *Byrne*, 108 Wn.2d at 446. Ten years after the dissolution became final, the wife filed a declaratory judgment action seeking partition of

the property to satisfy her lien. The Court of Appeals, relying on *Shaffer*, granted the

wife's declaratory judgment, finding the decree failed to provide a definite time for sale,

thus leaving the parties' interests tied together indefinitely. *Id*. at 449.

The Supreme Court reversed, holding that several factors distinguished this case

from *Shaffer*. First, the lien/title interest awarded in *Byrne* is different from a tenancy in

common and provides more certainty as to each parties' rights and responsibilities.

Whereas a tenancy in common between antagonistic former spouses creates the

likelihood of continuing litigation, "[a] lien is merely an encumbrance to secure an

obligation and involves no characteristics of co-ownership." *Id*. at 450. The Supreme

Court also held that the Court of Appeals decision failed to take into account that the

property division in *Byrne* was part of a settlement agreement, and the husband may have

relinquished other valuable rights and benefits in exchange for being able to hold the

property indefinitely. *Id*. This differed from *Shaffer* where the tenancy in common was

not chosen by the parties but rather imposed on them by the court. *Id*. at 451. Finally,

the *Byrne* Court clarified that the *Shaffer* requirement, that courts provide a definite and

final determination of property interests, "is satisfied by a specific disposition of each

asset which informs the parties of what is going to happen to the asset and upon what

operative events, e.g., that a set sum or formula of money will be paid upon the sale of

certain property." *Id*.

Since the *Byrne* decision in 1987, the use of tenancy in common to distribute community property has been considered by the courts with mixed results. In *In re Marriage of Sedlock*, 69 Wn. App. 484, 849 P.2d 1243 (1993), the trial court awarded the family home to the parties as tenants in common, but specifically defined their respective interests as three-fifths to the wife, and two-fifths to the husband. The trial court also set a fixed date to sell the home at fair market value. The *Sedlock* court upheld the tenancy in common, finding that although disfavored, the tenancy in common was for a short period of time, and the parties' interests were clearly established. *Id*. at 500.

More recently, in *Stokes v. Polley*, 145 Wn.2d 341, 347-48, 37 P.3d 1211 (2001), the Supreme Court considered the definition of "equity" in property that was awarded to one spouse. In reaching its conclusion, the court reiterated that courts have a duty to refrain from awarding property to parties as tenants in common. "To avoid this result and future forced sale and partition actions, courts should award the property itself to one spouse and an offsetting monetary award to the other spouse." *Id*.

Collectively, these cases stand for the proposition that the distribution of community assets by way of a tenancy in common should be avoided if at all possible, especially when the parties are not in agreement or capable of working together. If this form of ownership is truly the best alternative, it should only be employed when the term of the tenancy is short and the parties' interests are well defined.

These circumstances do not exist in this case. While the entire value of the community is not part of the record on appeal, it is fairly clear that the estate is worth over a million dollars. The largest assets include two properties and the business, all of which are now held as tenants in common. The parties did not ask for, and do not want, a tenancy in common. While Ms. Long's portfolio on paper is significant, her monthly income is negligible with no increase in the foreseeable future. Furthermore, Ms. Long may be precluded from qualifying for benefits due to the size of her portfolio, but she enjoys none of the perks of ownership. She has no right to use the value of these assets to purchase property or provide for daily living. She has no right to possession, utility, or management of her property. Yet, she is vulnerable to tax consequences, debt, and liability. Should Mr. Keele fail to pay taxes as he has done in the past Ms. Long's only recourse is further litigation. Indeed, the court made specific findings that these parties cannot work together.

Nor is the tenancy in common for a short period of time. As written, the tenancy will last longer than the marriage. At the earliest, Ms. Long will realize the partial value of her property in nine years, when she is 63 years old and the full value when she is 70 years old.

We recognize and appreciate that the court was attempting to provide stability and income for two children with additional needs. But given the significant value of the assets and the absolute lack of debt, tying the parties together as tenants in common for a

10

significant period of time did not effectuate a definite and timely distribution of the parties' property and was therefore an abuse of discretion.

Both parties ask for attorney fees on appeal, but neither party has filed a financial affidavit as required by RAP 18.1(c). We deny attorney fees on appeal. *See In re Marriage of Holmes*, 128 Wn. App. 727, 117 P.3d 370 (2005).

We reverse and remand to the trial court so it can establish a method of distributing the parties' property in a timely manner.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Fearing, J.

_____
Siddoway, A.C.J.