[No. 37731-4-II.   Division Two.   July 7, 2010.]

*In the Matter of the Marriage of* TERESA GRIMSLEY-LAVERGNE, *Respondent*, and MARK A. LAVERGNE, *Appellant*.

*Dennis J. McGlothin* (of *Olympic Law Group PLLP*), for appellant.

*Robert M. Morgan Hill* and *Samuel T. Menser* (of *Morgan Hill PC*), for respondent.

¶1 QUINN-BRINTNALL, J. — Mark LaVergne and Teresa Grimsley-LaVergne challenge the propriety of various orders entered by the trial court during dissolution proceedings that began in 2003. The threshold question we address in the published portion of this opinion is the enforceability

of a CR 2A stipulation and agreement (CR 2A agreement). We note that the trial court should have required the parties to comply with former RCW 26.09.070 (1989) rather than accepting the CR 2A agreement. However, because each party moved to enforce the CR 2A agreement at different times during the proceedings, both parties have waived their right to appeal the enforceability of the CR 2A agreement,[1] and we affirm.

## FACTS

¶2 Mark and Teresa[2] were married on October 1, 1994. During the marriage, they developed a successful multimillion dollar septic and plumbing business that they took turns managing. In 1997, the couple separated but reconciled in 1999. In January 2003, Teresa gave birth to twin boys, A.L. and L.L, one of whom had severe health problems for several years. On November 21, 2003, Teresa filed for a dissolution from Mark in Thurston County Superior Court. The couple formally separated the next day, on November 22, 2003.

¶3 On September 21, 2004, Mark, Teresa, and their attorneys attended a mediation with former King County Superior Court Commissioner Harry Slusher. The 11-hour mediation resulted in a partially typed but mostly scribbled document identified as a "CR 2A stipulation and agreement" signed by each party, the attorneys, and Slusher. The CR 2A agreement addressed many marriage dissolution issues, including (1) a parenting plan; (2) child support; (3) spousal maintenance; (4) extensive agreements on the distribution of personal property, real property, business

---

[1] In the unpublished portion of the opinion, we address (1) the trial court's authority to enter findings and a judgment during this pending appeal, citing RAP 7.2(e), and (2) whether substantial evidence supports several findings. Because the entered findings and judgment did not prejudice the issues in this appeal, the trial court did not violate RAP 7.2(e) when it entered its order and judgment. The remaining challenges to factual findings supported by substantial evidence lack merit.

[2] We use the parties' first names for clarity.

property, and personal and business liabilities; and (5) ownership and management of the septic and plumbing business.

¶4 The CR 2A agreement is confusing; portions are interlineated, sections are crossed out, and some crossed-out sections have adjacent notes stating, "Back in."[3] Clerk's Papers (CP) at 489-90, 493.[4] The CR 2A agreement does clearly state, however, that "W will prepare final paper-work, incl. [the property settlement agreement]. W will do final presentation." CP at 491. And part of the typed portion of the CR 2A agreement provides,

> Each party agrees and stipulate[s] this is a full and complete agreement between the parties and is enforceable in court. Each party understands that even though final documents yet need to be prepared this stipulation and agreement is effective and binding upon execution and enforceable in court. The parties stipulate and acknowledge that this agreement is fair and equitable. (Back in)[5]

CP at 489.

---

[3] Ultimately, pursuant to a binding arbitration clause, Slusher provided two separate decisions, one on November 26, 2004, and the other on April 9, 2008, settling disputes about the interpretation of portions of the CR 2A agreement.

[4] Although the portion of the record we cite in this opinion contains a complete copy of the CR 2A agreement, we note that several other parts of the record contain incomplete copies of the CR 2A agreement. That incomplete versions are included in the record is understandable considering that, in addition to the readability issues already mentioned, the handwritten portion of the CR 2A agreement contains multiple paragraphs labeled 4, 5, 6, 7, and 13 on separate pages such that the omission of certain pages might easily be overlooked.

[5]

C. Each party agrees and stipulate this is a full and complete agreement between the parties and is enforceable in court. Each party understands that even though final documents yet need to be prepared this stipulation and agreement is binding upon execution and enforceable in court. The parties stipulate and acknowledge that this agreement is fair and equitable. (Bzck M)

effective and

0-000000489

CR2A STIPULATION AND AGREEMENT

¶5 On September 21, 2004, after completing the mediation and signing the CR 2A agreement, Mark and Teresa spent the night at a Ramada Inn and had sexual relations. The parties dispute whether they had a conversation about abandoning the CR 2A agreement and reconciling. From the end of September 2004 until early July 2007, the parties lived together in their marital home and frequently slept in the same bed alongside their children. Also, during this same 33-month period, the parties agree that some portions of the CR 2A agreement were executed.

¶6 On June 20, 2007, after providing notice to the parties, Judge McPhee dismissed Teresa's 2003 dissolution petition without prejudice due to the parties' inactivity in pursuing it. Shortly thereafter, without notice to Mark, Teresa moved to vacate the dismissal and enforce the CR 2A agreement. Judge McPhee vacated the June 20, 2007 dismissal order and scheduled the case for a presentation of final orders pursuant to the CR 2A agreement.

¶7 On July 31, 2007, Thurston County Commissioner Schaller considered Mark's and Teresa's cross motions regarding the enforceability of the CR 2A agreement. Without referencing former RCW 26.09.070, a statute governing marriage separation agreements, the commissioner entered an order enforcing the CR 2A agreement. Mark filed a motion to reconsider. Except for revising its prior order by reserving any findings about whether the parties had reconciled, Commissioner Schaller declined to reconsider the ruling.

¶8 Thurston County Superior Court Judge Paula Casey held a two-day trial in January 2008 to determine if the parties had reconciled. On March 18, the trial court found that Mark and Teresa had not reconciled after signing the CR 2A agreement and upheld the enforceability of the CR 2A agreement. Mark filed a motion for discretionary review in this court, which our commissioner denied.

¶9 On April 29, the trial court entered a final decree of dissolution and findings of fact and conclusions of law, both

of which incorporated the CR 2A agreement by reference. The trial court also entered a final parenting plan and a final order of child support. On May 20, Mark filed a notice of appeal of these final orders and the March 18, 2008 order.

¶10 On August 5, while the appeal was pending, the trial court held a hearing to set a second evidentiary hearing. Citing RAP 7.2,[6] Mark filed a motion in this court challenging the trial court's authority to hold the second evidentiary hearing.[7] Before this court ruled on Mark's RAP 7.2 motion, and before the trial court conducted the scheduled hearing, Mark filed a motion and memorandum in the trial court asking that it enforce the CR 2A agreement.[8] On August 18, our commissioner ruled that the trial court had authority to conduct an evidentiary hearing but that it must seek permission before entering any modification orders.

¶11 The trial court held an evidentiary hearing on August 21 and 22 and, on October 28, it entered a "Second Amended Findings of Fact and Conclusions of Law Supporting Judgment Enforcing Decree." Mark filed a motion for reconsideration, arguing that the trial court (1) had exceeded its jurisdiction under RAP 7.2(e) by modifying the dissolution decree's property distribution and (2) erred by distributing property that did not exist on April 29, 2008,

---

[6] RAP 7.2 states in relevant part,

> (e) . . . The trial court has authority to hear and determine (1) postjudgment motions authorized by the civil rules, the criminal rules, or statutes, and (2) actions to change or modify a decision that is subject to modification by the court that initially made the decision. The postjudgment motion or action shall first be heard by the trial court, which shall decide the matter. If the trial court determination will change a decision then being reviewed by the appellate court, the permission of the appellate court must be obtained prior to the formal entry of the trial court decision.

[7] Mark prematurely filed his RAP 7.2 challenge to the trial court's authority. RAP 7.2 does not preclude holding a hearing, only the entry of an order that would affect an issue accepted by this court for review. The trial court had authority to hold the hearing, issue an oral ruling, and prepare an order in accord with its oral ruling. RAP 7.2 requires only that the trial court obtain permission from this court before entering an order that will alter the issues pending appeal.

[8] During argument before this court, Mark suggested that he never filed a motion requesting that the trial court enforce the CR 2A agreement. Mark's enforcement motion, filed on August 15, 2008, is at pages 1056-57 of the record on appeal.

when it entered the final dissolution decree. The trial court denied Mark's motion to reconsider. On January 20, 2009, the trial court entered its final "Judgment on Findings of Fact and Conclusions of Law." Mark appeals the October 28, 2008 order, the trial court's denial of his motion for reconsideration, and the January 20, 2009 final judgment.

## ANALYSIS

CR 2A ENFORCEABILITY

¶12 In this appeal, Mark argues, as he did at the January 2008 hearing, that he and Teresa reconciled after signing the CR 2A agreement and that their reconciliation voided the CR 2A agreement. Because both parties lack standing to challenge the enforceability of the CR 2A agreement, we affirm.

¶13 The record presented for our review is abysmal. The CR 2A agreement is scrawled with a felt-tipped pen and interlineated. In addition, sentences and whole paragraphs are crossed out and some are then noted, "Back in." CP at 489-90, 493. In spite of the obvious challenges involved in even reading the scribbled document, the parties both signed the CR 2A agreement, which contains a stipulation and acknowledgement that the agreement is fair and equitable. It is undisputed that Mark and Teresa executed some portions of the CR 2A agreement. For example, Teresa began buying Mark's share of the couple's business by making a down payment of $602,000, Mark received several of the promised $10,000 monthly salary payments from the couple's business, and Mark and Teresa started filing separate tax returns. Moreover, the record reflects that, although they did so at different times, Mark and Teresa each asked the trial court to enforce the CR 2A agreement. Accordingly, neither party has standing to argue that he or

she is aggrieved by the trial court's enforcement of the CR 2A agreement and the entry of the final dissolution decree.[9]

¶14 As we noted earlier, the trial court should have required the parties to comply with former RCW 26.09.070. The legislature expressly designed this statute to address the enforceability of parties' predissolution agreements. *See generally* former RCW 26.09.070. Moreover, former RCW 26.09.070 mandates that a predissolution separation contract be in writing and any terms of a parties' predissolution separation contract (except for parenting plans and child support) be incorporated into a decree of dissolution unless (1) the parties mutually intended to revoke the agreement or (2) the trial court finds the agreement was "unfair at the time of its execution." Former RCW 26.09-.070(1), (4), (5), (8). Neither the trial court nor the parties addressed the statute.

¶15 Affirmed.

¶16 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HUNT and VAN DEREN, JJ., concur.

Reconsideration denied and unpublished portion of opinion modified August 31, 2010.

Review denied at 170 Wn.2d 1030 (2011).

---

[9] We do not address the merits of the reconciliation issue because the trial court found on disputed evidence that the parties had not reconciled. *Fox v. Fox*, 49 Wn.2d 897, 898, 307 P.2d 1062 (1957) (stating that, on appeal, findings of a trial court made on conflicting evidence are not disturbed so long as they are supported by the record). The parties' testimonies conflict and their briefing continues the factual disputes that they have been waging for more than six years. Nevertheless, as to these disputed facts, substantial evidence supports the trial court's findings.