# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| ALEXANDRINA VAN GINNEKEN, | No.  45574-9-II |
| Respondent, | |
| v. | |
| MARINUS VAN GINNEKEN, | UNPUBLISHED OPINION |
| Appellant. | |
| In the Matter of the Marriage of | |
| MARINUS VAN GINNEKEN, | |
| Petitioner, | (Consolidated with No. 45710-5-II) |
| and | |
| ALEXANDRINA VAN GINNEKEN, | |
| Respondent. | |

JOHANSON, C.J.  —  In this consolidated appeal, Marinus Van Ginneken appeals the trial court's orders dismissing Alexandrina Van Ginneken's partition action and granting her CR 60(b) motion to set aside the parties' property settlement agreement.  Marinus[1] primarily argues that the trial court abused its discretion when it dismissed Alexandrina's partition action and entered the

_____

[1] For clarity, we refer to the parties by their first names, intending no disrespect.

CR 60(b) order. We hold that the trial court abused its discretion (1) when it dismissed the partition action sua sponte after hearing only Alexandrina's case-in-chief and by relying on an incorrect legal standard and (2) when it granted the CR 60(b) order setting aside the property settlement agreement by relying on incorrect legal standards. Accordingly, we reverse and remand to a different judge to reinstate the partition action and for further proceedings.

FACTS

In June 2008, Marinus and Alexandrina dissolved their 46-year marriage. The dissolution decree incorporated the parties' property settlement agreement. In relevant part, the property settlement agreement provided that Marinus and Alexandrina would (1) quit claim their home to themselves as joint tenants with right of survivorship (JTWROS), (2) share the expenses of the home, and (3) keep their separate pension accounts and personal property. The property settlement agreement also required Marinus to pay Alexandrina a lump sum "equalizing payment," but did not specify a time within which he must make the payment. Clerk's Papers (CP) (45574-9-II) at 17.

After the dissolution, Marinus and Alexandrina continued to live in their home until January 2009, when Marinus moved out. They also continued to deposit their Social Security payments and their Dutch and Canadian government pensions into their joint bank account. According to Marinus, this arrangement allowed Alexandrina to live in their home as long as she wanted and that if she decided to move, they could sell their home and separate their money at that time. But in September 2011, Alexandrina diverted her Social Security and Canadian pensions to a different checking account, and in February 2013, she did the same with her Dutch pension.

In October 2012, Alexandrina filed a complaint seeking (1) partition by sale of their home, (2) an accounting and equitable division of bank accounts, and (3) to enforce the property settlement agreement by compelling Marinus to make the equalizing payment. Marinus admitted that he had not made the equalizing payment but counterclaimed for (1) an accounting and (2) various offsets for expenses he had paid.

After Alexandrina's opening statement at trial on the partition action, the trial court commented that although Alexandrina's pleadings did not ask to set aside the property settlement agreement, it seemed she was asking for that remedy. Alexandrina responded that she chose to file a partition action instead. Alexandrina then presented her case-in-chief during which she, Marinus, and their daughter, Leona McCray, testified.

After Alexandrina's case-in-chief, the trial court dismissed the case sua sponte because it believed that the property settlement agreement made an invalid distribution of property based on two older Supreme Court cases.[2] The trial court rejected Marinus's argument that the property settlement agreement gave the trial court "wide latitude" to accept it, even if the specific property division was improper. The trial court also denied Marinus's reconsideration motion. On November 13, 2013, Marinus appealed the dismissal order.

In October 2013, following the court's dismissal of her partition action, Alexandrina moved for relief from the property settlement agreement under CR 60(b). This vacation motion was filed in the original dissolution action. Alexandrina argued that the property settlement agreement was (1) "void as a matter of law" and (2) made under duress, coercion, and fraud. CP

---

[2] *Shaffer v. Shaffer*, 43 Wn.2d 629, 630, 262 P.2d 763 (1953); *Bernier v. Bernier*, 44 Wn.2d 447, 449, 267 P.2d 1066 (1954).

(45710-5-II) at 46. Alexandrina filed a declaration that was consistent with her partition trial testimony. She declared that (1) Marinus exercised absolute control over their finances, (2) she had an "emotional breakdown" and was hospitalized after Marinus confronted her about alleged infidelities, (3) Marinus and a legal assistant pressured and intimidated her into signing the property settlement agreement, telling her that there was "little" money left, (4) the property settlement agreement did not disclose Marinus's assets, and (5) she was without the means to leave their home. CP (45710-5-II) at 41-43.

In his CR 60(b) response, Marinus argued that (1) the trial court should stay its decision until his direct appeal of the partition action's dismissal order is heard,[3] (2) the property settlement agreement made a proper distribution of their property, (3) both he and Alexandrina sought only to enforce the property settlement agreement and not to invalidate it, (4) he disclosed all of his assets during the dissolution, and (5) there is no evidence of fraud or misrepresentation. Marinus did not file a declaration.

On December 10, 2013, while Marinus's appeal of the dismissal order was pending in this court, the trial court granted Alexandrina's CR 60(b) motion. The trial court concluded that (1) RAP 7.2(e) did not apply because the dismissal order and the CR 60(b) motion were under "separate cause numbers and separate cases," (2) the property settlement agreement "appears it may not be fair and equitable," and (3) the property settlement agreement "appears it may not be free from undue influence." CP (45710-5-II) at 109-10. Proposed conclusion 2.4 originally said that the property settlement agreement "*was not* fair and equitable" and proposed conclusion 2.5

---

[3] Although Marinus did not specifically reference RAP 7.2(e) in his response to the CR 60(b) motion, he did refer to it in the motion hearing.

originally said that the property settlement agreement "*was not* free from undue influence." CP (45710-5-II) at 110 (emphasis added). However, the trial court deleted "was not" and interlineated "appears it may not be" in both conclusions. CP (45710-5-II) at 110. Marinus also appeals this order.

## ANALYSIS

### I. THE DISMISSAL ORDER

Marinus argues that the trial court abused its discretion by relying on improper legal authority when it dismissed Alexandrina's partition action. Alexandrina responds that the trial court properly dismissed the partition action because the property settlement agreement did not make a valid distribution of community property. We agree with Marinus.

### A. STANDARD OF REVIEW AND RULES OF LAW

We review a trial court's dismissal order for an abuse of discretion. *Quality Rock Prods., Inc. v. Thurston County*, 126 Wn. App. 250, 260, 108 P.3d 805 (2005). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or made for untenable reasons. *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 668-69, 230 P.3d 583 (2010). A decision is made for untenable reasons or based on untenable grounds if the trial court applies an incorrect legal standard or relies on unsupported facts. *Salas*, 168 Wn.2d at 669.

In 1973, the legislature enacted the dissolution act in part as a departure from former RCW 26.08.110 (1949),[4] which allowed the trial court to adopt a predissolution agreement like a property settlement "only if its terms were deemed fair and equitable by the judge." *In re Marriage of*

---

[4] LAWS OF 1973, 1st Ex. Sess., ch. 157.

5

*Little*, 96 Wn.2d 183, 192, 634 P.2d 498 (1981). Trial courts were required to give only "slight deference" to the parties' separation agreement and could disregard the agreement if "the trial court was satisfied that the terms 'do not constitute a proper division of the property.'" *In re Marriage of Shaffer*, 47 Wn. App. 189, 193, 733 P.2d 1013 (1987) (quoting *Lee v. Lee*, 27 Wn.2d 389, 400, 178 P.2d 296 (1947)).

Under current dissolution law, parties "in order to promote the amicable settlement of disputes attendant upon their separation or upon the filing of a petition for dissolution of their marriage . . . may enter into a written separation contract providing for . . . the disposition of any property owned by both or either of them." RCW 26.09.070(1).[5]

---

[5] Appellant uses the terms "property settlement agreement" and "separation agreements" interchangeably. Respondent does not dispute the appellant's term usage. In drafting the post-1973 legislation governing predissolution agreements, the legislature did not clearly state whether "property settlement agreements" as commonly used are meant to be construed as "separation agreements" or "separation contracts" under RCW 26.09.070. The court in *Little* stated, "The entire sequence of statutes enacted by the same legislative authority, relating to the same subject matter, should be considered in placing a judicial construction upon any one of the acts." 96 Wn.2d at 189. Additionally, a primary principle of statutory interpretation is to "avoid interpreting statutes to create conflicts between different provisions, so as to achieve a harmonious statutory scheme." *Scheib v. Crosby*, 160 Wn. App. 345, 350, 249 P.3d 184 (2011). Here, RCW 26.09.070 governs "separation contracts," while RCW 26.09.080 governs the "[d]isposition of property factors," while neither specifically mention predissolution "property settlement agreements." However, provisions throughout ch. 26.09 RCW reference and promote voluntary party agreements akin to property settlement agreements, including RCW 26.09.070 (separation contracts), RCW 26.09.015 (mediation proceedings), RCW 26.09.184 (permanent parenting plan), and RCW 26.09.187 (criteria for establishing permanent parenting plan). Additionally, we note that *In re Marriage of Grimsley-LaVergne*, 156 Wn. App. 735, 742, 236 P.3d 208 (2010), characterizes the parties' property settlement agreement as a predissolution separation contract and notes, "The legislature expressly designed [RCW 26.09.070] to address the enforceability of parties' predissolution agreements." Division One also applied RCW 26.09.070 to what the parties in *In re Marriage of Glass*, 67 Wn. App. 378, 390 & n.13, 835 P.2d 1054 (1992), called a "property settlement agreement" (holding that though the agreement was actually a decree, a *separation contract* was "embodied into [the] decree" and must be enforced under RCW 26.09.070(7)). Similarly, *In re Stone*, 119 B.R. 222, 228 (Bankr. E.D. Wash. 1990), also speaks to a property settlement agreement as a separation agreement under RCW 26.09.070.

The separation contract is binding upon the court unless it finds that the contract was "unfair at the time of its execution." RCW 26.09.070(3). RCW 26.09.070 "mandates that a predissolution separation contract . . . be incorporated into a decree of dissolution unless (1) the parties mutually intended to revoke the agreement or (2) the trial court finds the agreement was 'unfair at the time of its execution.'" *In re Marriage of Grimsley-LaVergne*, 156 Wn. App. 735, 742, 236 P.3d 208 (2010) (quoting former RCW 26.09.070(4) (2008)). Also remarking on the evolution of dissolution law since 1973, the *Little* court recognized the following:

> Another important change is in the role of the court in approving separation agreements. Under the prior law, such an agreement was to be adopted only if its terms were deemed fair and equitable by the judge. Under the new law, amicable agreements are preferred to adversarial resolution of property and maintenance questions, as well as those of child custody and support, and the separation contract is binding upon the court unless it finds that the contract was unfair at the time of its execution. RCW 26.09.070(3).

96 Wn.2d at 192-93 (citations omitted).

### B. THE TRIAL COURT APPLIED AN INCORRECT LEGAL STANDARD TO THE PROPERTY SETTLEMENT AGREEMENT

1. RCW 26.09.070 CONTROLS

First, the trial court applied an incorrect legal standard when it dismissed the partition action because it did not consider whether the property settlement agreement was unfair when it was executed, as RCW 26.09.070(4) requires. As previously stated, in order to "promote the amicable settlement of disputes attendant upon their separation or upon the filing of a petition for dissolution," RCW 26.09.070 provides that the property settlement agreement is "binding" on the trial court and must be incorporated into the dissolution decree absent a determination that the property settlement agreement was unfair at the time that it was executed. RCW 26.09.070(1), (3); *Grimsley-LaVergne*, 156 Wn. App. at 742.

However, here the trial court did not make a finding that the property settlement agreement was unfair at the time it was executed before dismissing the partition action. It concluded, instead, that under *Shaffer* and *Bernier*, the manner in which the property settlement agreement distributed Marinus's and Alexandrina's real property—holding the real property as JTWROS—was impermissible as a matter of law.[6] The trial court abused its discretion because it applied an incorrect legal standard. *Salas*, 168 Wn.2d at 669.

2. *SHAFFER* AND *BERNIER* ARE INAPPLICABLE AND FACTUALLY DISTINGUISHABLE

Second, the trial court abused its discretion by relying on *Shaffer* and *Bernier* because those cases are inapplicable and distinguishable. In *Shaffer v. Shaffer*, 43 Wn.2d 629, 630, 262 P.2d 763 (1953), the trial court imposed the tenancy in common on the parties involuntarily. *Byrne v. Ackerlund*, 108 Wn.2d 445, 451, 739 P.2d 1138 (1987). Here, in contrast, the parties agreed to the property settlement agreement's distribution of their real property. In *Bernier v. Bernier*, 44 Wn.2d 447, 450-51, 267 P.2d 1066 (1954), the Supreme Court noted that the property settlement agreement appeared not to be a fair settlement and thus the trial court properly declined to impose the proposed tenancy in common. But here, the trial court did not determine whether the property settlement agreement was unfair.

---

[6] In *Shaffer*, the Supreme Court held that awarding an apartment house to former spouses as either joint owners or tenants in common was the same as leaving the property as "community property," and thus did not fulfill the court's statutory duty under former RCW 26.08.110 to have interests in property definitely and finally determined without prospect of future litigation. 43 Wn.2d at 630-31. Similarly, in *Bernier*, the Supreme Court held that awarding the home of the parties to them as tenants in common was error and that the trial court properly declined to approve a former property settlement agreement as a fair disposition of the parties' rights. 44 Wn.2d at 449.

In *Byrne*, 108 Wn.2d at 451, our Supreme Court confirmed the significance of the voluntariness and fairness evaluation distinctions under the *Shaffer* and *Bernier* line of cases.[7] Our Supreme Court concluded that "*Shaffer* does not prevent a court from accepting such an arrangement in effectuating the parties' intent" in part because the parties entered into a "voluntary and mutually beneficial arrangement." *Byrne*, 108 Wn.2d at 451. The *Byrne* court held specifically that *Shaffer* is satisfied where there is a "specific disposition of each asset which informs the parties of what is going to happen to the asset and upon what operative events, *e.g.*, that a set sum or formula of money will be paid upon the sale of certain property." 108 Wn.2d at 451. Several other appellate decisions have since cited *Byrne* and recognized that it limited *Shaffer*'s and *Bernier*'s holdings. *See, e.g.*, *In re Marriage of Sedlock*, 69 Wn. App. 484, 499, 849 P.2d 1243 (1993) ("The Supreme Court has recently expressed an unwillingness to broaden *Shaffer* beyond its facts.").

In the Van Ginnekens' case, the trial court did not determine whether the property settlement agreement was "voluntary" or "mutually beneficial" before dismissing the partition action nor did it determine whether each asset was distributed or would be distributed after some operative event. Instead, the trial court's dismissal was based on its mistaken assumption that, under *Shaffer* and *Bernier*, the property settlement agreement was invalid because the law does not permit Alexandrina and Marinus to hold their real property as JTWROS after their dissolution. Neither *Shaffer* nor *Bernier* provides authority—and we are aware of no other authority—for the

---

[7] Although the Byrnes' dissolution decree was entered in 1972, *Byrne* was decided after the dissolution act was adopted in 1973, and ultimately resulted in a narrowing of the decisions in *Shaffer* and *Bernier*. 108 Wn.2d at 448; 43 Wn.2d 630-31; 44 Wn.2d 550-51.

9

proposition that holding real property under a property settlement agreement as JTWROS is an improper distribution as a matter of law.

Alexandrina argues that under *Shaffer* and *Bernier*, the property settlement agreement is "void" because it leaves the parties with the same ownership position that they had prior to signing the property settlement agreement. However, this argument ignores RCW 26.09.070's mandate that settlement agreements are "binding" on trial courts unless the property settlement agreement was unfair at the time that it was executed. We recognized the statute's departure from the rule in *Shaffer* and *Bernier* in our *In re Shaffer* decision and again in *Grimsley-LaVergne*. 47 Wn. App. at 193-94; 156 Wn. App. at 742. Here, the trial court dismissed the case because it thought a JTWROS was an improper distribution of community property. Therefore, the trial court abused its discretion because it relied on an improper legal standard when it dismissed the partition action.[8]

## II. THE CR 60(B) ORDER

Next, we proceed to the merits of Marinus's appeal of the trial court's CR 60(b) order setting aside the property settlement agreement.[9] Marinus argues that two of the trial court's conclusions of law are not supported by its findings of fact. Marinus claims that because the trial court's conclusions were erroneous, the trial court abused its discretion when it granted

---

[8] The trial court arguably abused its discretion in two additional ways. First, it dismissed Alexandrina's partition action sua sponte when both parties elected to enforce the property settlement agreement through the partition action. Second, it dismissed the partition action after hearing only Alexandrina's case-in-chief, thereby denying Marinus the opportunity to be heard. In order to uphold the appearance of fairness doctrine, we remand this case to a different judge for further proceedings.

[9] Marinus argues that the trial court lacked authority under RAP 7.2(e) to enter a final order on Alexandrina's CR 60(b) motion. We assume without deciding that the trial court had the authority to enter its order, and we exercise our discretion to address the CR 60(b) issue on the merits.

Alexandrina's CR 60(b) motion. Alexandrina contends that there was sufficient evidence of "duress, fraud, and irregularity in the proceedings" to justify the trial court's CR 60(b) order vacating the property settlement agreement. Br. of Resp't at 12. Again, we agree with Marinus.[10]

A. STANDARD OF REVIEW AND RULES OF LAW

CR 60(b) motions are "'addressed to the sound discretion of the trial court, whose judgment will not be disturbed absent a showing of a manifest abuse of discretion.'" *In re Marriage of Newlon*, 167 Wn. App. 195, 199, 272 P.3d 903 (2012) (quoting *In re Marriage of Burkey*, 36 Wn. App. 487, 489, 675 P.2d 619 (1984)); *Jones v. City of Seattle*, 179 Wn.2d 322, 360, 314 P.3d 380 (2013).

CR 60(b) provides trial courts with the authority to relieve parties from a final judgment or order for one of 11 reasons. Those reasons include "[f]raud . . ., misrepresentation, or other misconduct of an adverse party" and "[a]ny other reason justifying relief."[11] CR 60(b)(4), (11).

B. WHETHER THE PROPERTY SETTLEMENT AGREEMENT "APPEARS"
FREE FROM UNDUE INFLUENCE

We first turn to the trial court's conclusion that the property settlement agreement "appears it may not be free from undue influence" (CP (45710-5-II) at 110), which arguably fits into CR

---

[10] Marinus also argues that five of the trial court's findings of fact are not supported by substantial evidence. However, even assuming that these findings *are* supported by substantial evidence, the trial court's conclusions of law are erroneous. Therefore, we do not address Marinus's objections to the trial court's findings.

[11] Alexandrina's CR 60(b) motion does not specifically identify which subsection of CR 60(b) she relies on to challenge the property settlement agreement. But it appears that her motion is based on CR 60(b)(4), which covers "[f]raud . . ., misrepresentation, or other misconduct"—the actions she attributes to Marinus in negotiating the property settlement agreement and, thus, we address CR 60(b)(4). CP (45710-5-II) at 46 ("such Property Settlement Agreement was based upon fraud, and that [Alexandrina] was intimidated and coerced into signing such document").

60(b)(4)'s provision permitting the trial court to grant relief from a judgment for "[f]raud . . ., misrepresentation, or *other misconduct of an adverse party*." (Emphasis added.) Marinus argues that there was no evidence that Alexandrina had mental health issues when the property settlement agreement was executed. Alexandrina argues that there is sufficient evidence of undue influence. We conclude that the trial court erred when it granted Alexandrina's CR 60(b) motion.

In general, settlement agreements are "governed by general principles of contract law." *Lavigne v. Green*, 106 Wn. App. 12, 20, 23 P.3d 515 (2001). "Undue influence is unfair persuasion of a party who is under the domination of the person exercising the persuasion or who by virtue of the relation between them is justified in assuming that that person will not act in a manner inconsistent with his welfare." RESTATEMENT (SECOND) OF CONTRACTS § 177(1) (1981); *In re Estate of Jones*, 170 Wn. App. 594, 606, 287 P.3d 610 (2012). Undue influence must be shown by clear, cogent, and convincing evidence. *Jones*, 170 Wn. App. at 606.

Here, the trial court applied the incorrect legal standard because CR 60(b)(4) does not permit it to set aside a dissolution decree because the property settlement "appears" it may not be free from undue influence. The proposed CR 60(b) order submitted by Alexandrina stated that the property settlement agreement "was not free from undue influence" but the trial court deleted that more definitive language and inserted it "appears" that the property settlement agreement was the product of undue influence. CP (45710-5-II) at 110. When undue influence must be proven by

clear, cogent, and convincing evidence, *Jones*, 170 Wn. App. at 606, an "appearance" of undue influence is an incorrect legal standard and, thus, an abuse of discretion.[12]

C.  WHETHER THE PROPERTY SETTLEMENT AGREEMENT "APPEARS" FAIR AND EQUITABLE

We next examine the trial court's conclusion that the property settlement agreement "appears" it may not be fair and equitable, which arguably fits into CR 60(b)(11)'s provision for setting aside a judgment for "[a]ny other reason justifying relief."  Marinus argues that the trial court's statements about their financial affairs are mistaken.  Alexandrina argues that there is evidence that the property settlement agreement was not "fairly reached."  Br. of Resp't at 14.  Again, we conclude that the trial court abused its discretion.

CR 60(b)(11) permits the trial court to provide relief from judgment for "[a]ny other reason."  However, its application "should be reserved for situations involving extraordinary circumstances not covered by any other section of CR 60(b)(11)."  *In re Marriage of Furrow*, 115 Wn. App. 661, 673, 63 P.3d 821 (2003).

Here, the trial court abused its discretion because CR 60(b)(11) does not permit it to set aside the property settlement agreement merely because it "appears" it may not be fair and equitable.  The trial court made no findings and engaged in no analysis of what extraordinary

---

[12] It is also reasonable to conclude that the trial court's findings of fact do not support its conclusion regarding undue influence.  The trial court's findings related to undue influence include that (1) Alexandrina was not represented by counsel, (2) Marinus controlled the family finances, (3) Alexandrina did not have "actual, in reality" access to their money, and (4) Marinus knew that Alexandrina "sought a mental health evaluation and sought treatment."  CP (45710-5-II) at 109. These findings do not amount to clear, cogent, and convincing evidence of undue influence.

circumstances exist here that would allow the judgment to be set aside. The trial court again deleted language in the order that said the property settlement agreement "was not fair and equitable," and instead concluded that the property settlement agreement "appears" it may not be fair and equitable. CP (45710-5-II) at 110. The trial court's findings of fact do not explain whether it thought the *terms* of the property settlement agreement were unfair or whether it thought the *manner* in which the property settlement agreement was executed or negotiated was unfair. The trial court applied an incorrect legal standard by failing to find extraordinary circumstances that would justify relief. Further, the appropriate standard to set aside a property settlement agreement is not whether the property settlement agreement was "fair and equitable" but whether it was "unfair at the time of its execution" and the trial court made no findings or conclusions relating to that question. RCW 26.09.070(3).

Accordingly, we hold that the trial court abused its discretion because it failed to apply a clear, cogent, and convincing standard to find undue influence and failed to find that extraordinary circumstances existed to justify relief under CR 60(b). The CR 60(b) order is reversed.

## III. ATTORNEY FEES

Marinus argues that he is entitled to attorney fees on appeal based on (1) RCW 26.09.140 and (2) the property settlement agreement. We conclude appellate attorney fees are not appropriate at this time. First, RCW 26.09.140 provides that we may "after considering the financial resources

14

of both parties . . . order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." Where an applicable statute mandates the consideration of financial need in awarding attorney fees, the parties must submit financial affidavits no later than 10 days prior to the hearing. RAP 18.1(c). Here, neither Marinus nor Alexandrina filed a financial affidavit. Thus, attorney fees under RCW 26.09.140 are denied.

Second, Marinus claims that he is entitled to attorney fees under the property settlement agreement. We disagree.

Regarding attorney fees, the property settlement agreement states,

It is agreed that neither party will claim, assert, or demand of or against the other party any relief different than is embodied in this agreement and will not assert one as against the other any claim or demand which is inconsistent or contrary to the terms hereof. Should either party do so, that party will be responsible for all reasonable attorneys fees incurred by the other party in enforcing this agreement.

CP (45574-9-II) at 19. Alexandrina did not seek the dismissal order herself; the trial court dismissed it sua sponte. Thus, any appellate attorney fees incurred on the basis of the dismissal order are not recoverable under the property settlement agreement because they were not the result of Alexandrina's claim or demand for any relief "different than [what] is embodied in this agreement." CP (45574-9-II) at 19. But Alexandrina did seek to set aside the property settlement agreement under CR 60(b). Arguably the property settlement agreement does provide attorney fees to Marinus if he prevails in enforcing the property settlement agreement. However, because we do not reach the merits of the validity of the property settlement agreement, any award of attorney fees under the property settlement agreement is premature.

15

In conclusion, we vacate the trial court's dismissal order and remand to reinstate the partition action before a different judge. We also reverse the CR 60(b) order and deny Marinus's request for attorney fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

WORSWICK, J.

MELNICK, J.